UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- x

UNITED STATES OF AMERICA, :
:
- v. - :
:
ROBERT COPLAN, :
MARTIN NISSENBAUM, :
RICHARD SHAPIRO, :  (S1) 07 Cr. 453 (SHS)
BRIAN VAUGHN, :
DAVID SMITH, and :
CHARLES BOLTON, :
:
             Defendants. :

------------------------------------------- x


**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ROBERT COPLAN TO
DISMISS COUNTS FIVE AND ELEVEN OF THE SUPERSEDING INDICTMENT**


        ZUCKERMAN SPAEDER LLP
        Attorneys for Robert Coplan
        1800 M Street, NW, Suite 1000
        Washington, DC 20036
        (202) 778-1800

Of Counsel:
Paula M. Junghans
M. Sandy Weinberg
Andrew N. Goldfarb

**TABLE OF CONTENTS**
INTRODUCTION ................................................................................................................ 1

I. BACKGROUND ..................................................................................................... 2

   A. COUNT FIVE ..................................................................................................... 2

   B. COUNT ELEVEN ............................................................................................... 5

II. ARGUMENT ........................................................................................................... 5

   A. VENUE FOR COUNT FIVE DOES NOT LIE IN THE SOUTHERN DISTRICT OF NEW YORK. ...... 8

   B. VENUE FOR COUNT ELEVEN DOES NOT LIE IN THE SOUTHERN DISTRICT OF NEW YORK. 10

CONCLUSION ................................................................................................................ 13

## INTRODUCTION

Pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, defendant Robert Coplan respectfully moves this Court to dismiss Counts Five and Eleven of the superseding indictment for lack of venue.

Count Five charges Mr. Coplan with attempting to evade income taxes for the 2000 calendar year "in the Southern District of New York and elsewhere" in violation of 26 U.S.C. § 7201. As reflected in the indictment, during 2000 and 2001, Mr. Coplan lived in Maryland and worked at Ernst & Young's offices in Washington, D.C. He did not engage in any of the charged means of evasion in the Southern District of New York.

Count Eleven charges Mr. Coplan with making false statements to the IRS on or about June 20, 2002, "in the Southern District of New York and elsewhere," in violation of 18 U.S.C. § 1001. In Count Eleven, the government alleges that Mr. Coplan made such false statements "in connection with an examination by the IRS of tax shelters marketed by Ernst & Young." In fact, the alleged false statements were made only "elsewhere" – in the District of Columbia by Mr. Coplan during a single deposition and were simultaneously received by the government in the District of Columbia. Thus, Mr. Coplan did not engage in any of the conduct prohibited by § 1001 in the Southern District of New York.

Venue for Counts Five and Eleven therefore does not properly lie in this district. The government's attempt to prosecute Mr. Coplan for these alleged violations in the Southern District is contrary to the fundamental right of criminal defendants to be tried in the venue where the alleged criminal conduct occurred. Where, as here, the facts are undisputed, that right – conferred by the Constitution, embodied in Rule 18 of the Federal Rules of Criminal Procedure, and repeatedly upheld by the Supreme Court and courts of this Circuit – cannot yield to a

boilerplate allegation in the indictment. The court should dismiss these two counts against Mr. Coplan.

I.   **BACKGROUND**

As put forth in the superseding indictment,[1] at all times relevant to the indictment Ernst & Young ("E&Y") provides accounting services, tax planning and advice, and related services to corporate and individual clients. (Superseding Indictment ¶ 1). In 1998, the leader of E&Y's Personal Financial Counseling ("PFC") group convened a group to examine and develop tax-advantaged investment strategies for existing and potential E&Y clients. The group was initially known as "VIPER" ("Value Ideas Produce Extraordinary Results") and later changed its name to "SISG" ("Strategic Individual Solutions Group"). (*Id.*. ¶¶ 2-4).

The members of VIPER/SISG were drawn mostly from E&Y's National Tax Department ("National Tax") which was headquartered in Washington, DC. Mr. Coplan was a member of the PFC group within National Tax, and was asked by E&Y management to help coordinate the VIPER/SISG effort. His particular expertise was in personal income taxes, estate and gift taxes, and excise taxes. (*Id.* ¶ 7).

A.   **Count Five**

In this case, the government packages as a criminal conspiracy much of the investment and tax planning work undertaken by Mr. Coplan, his co-defendants, and others involved in VIPER/SISG. The government's indictment describes four tax-advantaged investment strategies that it claims were part of a scheme to defraud the IRS in violation of 18 U.S.C. § 371. (*See generally id.* ¶¶ 21-59). One of those strategies was known as COBRA ("Currency Options Bring Reward Alternatives"). (*Id.*).

---

[1] On February 19, 2008, the government filed a superseding indictment with thirteen counts. The two counts at issue in this motion, Counts Five and Eleven, were in essentially identical form in the original indictment as Counts Five and Four, respectively.

2

In 2000, Mr. Coplan, Mr. Nissenbaum, Mr. Shapiro, and eight other E&Y partners personally implemented a version of COBRA. This COBRA transaction is referred to as the "Private Transaction." According to the indictment, in connection with the Private Transaction, Mr. Coplan:

- "developed and utilized a [COBRA-like] shelter to evade" his own taxes (*id.* ¶ 68);

- "received a distribution of Cap Gemini stock" in May 2000, along with other E&Y partners, in connection with E&Y's sale of its global consulting business to Cap Gemini (*id.* ¶¶ 69-70);

- "decided" along with 10 other E&Y partners "to form an entity called Tradehill Investments, LLC," "to use Tradehill to carry out a transaction similar to COBRA," and along with Mr. Nissenbaum and Mr. Shapiro, "undertook to act as representatives for the other E&Y partners" (*id.* ¶ 71);

- "signed" an operating agreement for Tradehill's subsidiary Churchwind Investments, LLC, that "falsely stated that Churchwind was organized for 'investment purposes.'" (*id.* ¶ 72);

- contributed a portion of the $350,000 in cash to Tradehill (*id.* ¶ 73);

- was a member of Hiddenbrook Holding, LLC, an entity that received some of the stock Tradehill had received upon resigning from a separate entity, AD International FX Fund (*id.* ¶ 76);

- filed his 2000 tax return in April 2001, reporting losses from the Tradehill transaction that eliminated tax liability on "all or most of the income" received from the Cap Gemini transaction (*id.* ¶ 80); and

3

- "made arrangements" for an attorney to represent him in responding to an IRS Information Document Request in or around May 2003 (*id.* ¶ 81).

Count Five of the superseding indictment charges Mr. Coplan with tax evasion under IRC § 7201 (26 U.S.C. § 7201). As part of his allegedly unlawful, willful, and knowing attempt to evade and defeat a substantial part of the income tax owed for 2000, Count Five charges that Mr. Coplan engaged in the following conduct "in the Southern District of New York and elsewhere":

- designing and implementing a "tax shelter transaction";
- using the tax shelter to generate tax losses he knew could not properly be deducted on his tax return;
- creating entities that served no legitimate business purpose;
- preparing and executing false and fraudulent documents;
- "preparing and causing to be prepared, signing and causing to be signed, and filing and causing to be filed" a false and fraudulent income tax return; and
- taking steps to conceal from the IRS the true facts relating to the tax shelter, including providing false information in response to IDRs sent by the IRS.

(*Id.* ¶ 127). Throughout this period, Mr. Coplan lived in Rockville, Maryland and, as the indictment acknowledges, worked out of E&Y's Washington, DC office. (*Id.* ¶ 7). In short, even if Mr. Coplan committed the acts charged by the government in this case that bear on the Private Transaction and Count Five, the indictment provides no basis, other than the government's boilerplate allegation in Count Five, to substantiate that he committed any of them in the Southern District of New York.

### B. Count Eleven

The facts relevant to Count Eleven are simple and few. As stated in the superseding indictment, in or around April 2002, the IRS began an investigation relating to E&Y's "tax shelter activities." (*Id.* ¶ 62). In connection with the investigation, the IRS sought Mr. Coplan's sworn testimony (*Id.*).

On June 20, 2002, Mr. Coplan met with IRS officials at a law firm's offices in Washington, D.C., and provided approximately three and a half hours of sworn testimony. *See* Depo. Tr. of Robert Coplan in *In re Liability of Ernst & Young for IRC Sections 6707 and 6708 Penalties* (June 20, 2001) (relevant excerpts attached as Exhibit A). Three IRS representatives attended the deposition – two from its New York, New York office and one from IRS headquarters in Washington, DC. No one participated in the proceeding via telephone or teleconference. June 20 was the only day that Mr. Coplan gave sworn testimony to the IRS.

The indictment does not acknowledge the fact that Mr. Coplan made, and the government received, the alleged false statements entirely within the District of Columbia. Nevertheless, in Count Eleven the government charges that Mr. Coplan gave the allegedly false testimony "[o]n or about June 20, 2002, in the Southern District of New York and elsewhere." (*Id.* ¶ 135). As the transcript itself plainly states that the deposition occurred entirely "elsewhere" – in Washington, D.C.

## II. ARGUMENT

This motion under Rule 12(b) of the Federal Rules of Criminal Procedure presents a straightforward question of law: Can the government prosecute Mr. Coplan for violations of 26 U.S.C. § 7201 and 18 U.S.C. § 1001 in the Southern District of New York when the defendant did not commit any of the essential acts comprising the alleged criminal conduct in this district?

5

As demonstrated below, under the Constitution and numerous decisions of the Supreme Court and courts in this Circuit, the answer is no.  The court should dismiss Counts Five and Eleven.

A Rule 12(b) motion is the appropriate mechanism for a pre-trial challenge to the propriety of venue.  *See* Wright & Leipold, *Federal Practice and Procedure*: § 191 (2008).  Rule 12(b)(2) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."  "[G]eneral issue" refers to guilt or innocence on the underlying charge.  *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998) (citation omitted).  Pretrial dismissal of counts for improper venue is appropriate in certain circumstances, including where, as here, the operative facts are not in dispute.  *See, e.g.*, *United States v. Cabrales*, 524 U.S. 1, 4-5 (1998) (affirming pretrial dismissal of money laundering counts on venue grounds); *United States v. Reed*, 601 F. Supp. 685 (S.D.N.Y.), *rev'd on substantive grounds*, 773 F.2d 477 (2d Cir. 1985) (dismissing two counts of indictment for improper venue on defendants' Rule 12(b) motion).

Many courts have recounted the conceptual and historical underpinnings of the established right of a criminal defendant to be tried in the district in which the alleged crime occurred.  *See, e.g.*, *United States v. Johnson*, 323 U.S. 273, 275-76 (1944); *United States v. Cabrales*, 524 U.S. at 6; *United States v. Saavedra*, 223 F.3d 85, 88 (2d Cir. 2000).  The Constitution contains *two* venue-related provisions: Article III directs that criminal trials "shall be held in the State where the said Crimes shall have been committed." U.S. Const., art. III sec. 2. The Sixth Amendment similarly provides:  "In all criminal prosecutions, the accused shall enjoy the right to a[n] . . . impartial jury of the State and district wherein the crime shall have been committed . . . ."  U.S. Const. amend. VI.

Rule 18 of the Federal Rules of Criminal Procedure implements this bedrock constitutional principle: "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. This dictate applies to every charge in a criminal indictment: "[w]hen a defendant is charged in more than one count, venue must be proper with respect to each count." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989). The government has attempted to circumvent this requirement here. It may not do so.

A court must determine the proper venue for prosecution by determining the essential act or acts comprising the allegedly criminal conduct and where it, or they, occurred. *See, e.g., United States v. Anderson*, 328 U.S. 699, 703 (1946). Unless specified by statute, the *locus delicti* is determined by looking at (1) "the conduct constituting the offence (the nature of the crime)" and (2) "the location of the commission of the criminal acts." *United States v. Rodriguez-Moreno*, 526 U.S. 277, 279 (1999) (per curium) (citing *Cabrales*, 524 U.S. at 6-7) (additional citations and footnote omitted). Reflecting the constitutional command that trial should occur where the crime was *committed*, the Supreme Court, and this Circuit have repeatedly emphasized that the focus of the inquiry must be on the location of the *conduct* of the accused, and that the conduct must be that conduct prohibited by the statute. *See, e.g., Rodriguez-Moreno*, 526 U.S. at 280 (focusing on the "*essential conduct elements*" of 18 U.S.C. § 924(c)(1) (emphasis added)); *United States v. Smith*, 198 F.3d 377, 384 (2d Cir. 1999) ("prosecution should take place *only* in those districts in which *an act occurs* that the statute at issue proscribes") (emphasis added) (citing *United States v. Brennan*, 183 F.3d 139, 147 (2d Cir. 1999)).

7

When a crime consists of a single noncontinuing act, the inquiry is simple and straightforward – the crime "is 'committed' in the district where the act is performed." *Beech-Nut Nutrition*, 871 F.2d at 1188 (citing *Anderson*, 328 U.S. at 703) (additional citation omitted).

### A.    Venue For Count Five Does Not Lie In The Southern District Of New York.

Court Five charges Mr. Coplan with a violation of 26 U.S.C. § 7201.  That section makes it a felony to "willfully attempt[] in any manner to evade or defeat any tax imposed by this title or the payment thereof."  21 U.S.C. § 7201.

Section 7201 contains no venue provision.  Courts have characterized a violation of § 7201 as a "continuing offense" [2] within the meaning of 18 U.S.C. § 3237(a), and have therefore found venue for § 7201 offenses to lie in any district where an affirmative act constituting an "attempt to evade" was begun, continued or completed.  *See* 18 U.S.C. § 3237; *United States v. Strawberry*, 892 F. Supp. 519, 521 (S.D.N.Y. 1995) (citing *United States v. Slutsky*, 487 F.2d 832, 839 (2d Cir.1973), *cert. denied*, 416 U.S. 937 (1974).

Consistent with *Rodriguez-Moreno*'s instruction that a determination of venue should focus on the where the essential conduct elements of the crime were committed (526 U.S. at 278), in § 7201 cases "the government generally must show that the defendant engaged in some affirmative act in this district with a tax evasion motive."  *United States v. Martino*, No. S1 00 CR 389(RCC), 2000 WL 1843233, at *2  (S.D.N.Y. Dec. 14, 2000) (citations omitted).  Here, the Court is able to make a pretrial determination that Mr. Coplan did not commit in the Southern District any of the acts that the government charges comprised an "attempt to evade and defeat" taxes owed for 2000.  *Cf. United States v. Griffin*, 814 F.2d 806, 809-810 (1st Cir. 1987)

---

[2] "A continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy.  Where such an act or series of acts runs through several jurisdictions, the offense is committed and cognizable in each."  *United States v. Midstate Horticultural Co.*, 306 U.S. 161, 166 (1939) (internal citation omitted).

8

(affirming district court pretrial dismissal of 18 U.S.C. § 7206(2) charge (assisting the preparation of false tax returns) against Griffin for lack of venue in West Virginia where Griffin's relevant conduct occurred only in Massachusetts).[3]

With respect to § 7201, the essential conduct elements are the "attempt" to "evade" or "defeat" any tax or the "payment" thereof. The Supreme Court's decision in *Spies v. United States* case is oft-cited for its identification of types of conduct that fall within the statute. 317 U.S. 492, 499 (1943).[4] In Count Five here, the government has identified six categories of conduct that support its tax evasion charge against Mr. Coplan. As reflected in the indictment, Mr. Coplan worked in E&Y's Washington, DC office; his actions relating to the Private Transaction therefore took place in the District of Columbia. The indictment offers no factual basis that Mr. Coplan did any of the following in the Southern District of New York: "design or implement" the Private Transaction; "use" the Private Transaction "to generate tax losses"; "create" entities; "prepare and execute" documents; or "take various steps" to conceal the true facts about the Private Transactions. *See* Sup. Indict. ¶ 127. Moreover, Mr. Coplan himself prepared and signed his Form 1040, which lists his then-home address in Rockville, Maryland. *See* U.S. Individual Income Tax for 2000 for Robert Coplan, Form 1040 (pages 1 & 2) (attached as Exhibit B). Thus, the indictment on its face is insufficient to establish the Southern District of New York is a proper venue for Count Five.

The government has included certain of Mr. Coplan's alleged acts constituting tax evasion as overt acts in furtherance of the conspiracy charged in Count One. It may introduce

---

[3] *But see United States v. Stein*, 429 F. Supp. 2d 633 (S.D.N.Y. 2006) (denying pretrial motion to dismiss tax evasion count for lack of venue).

[4] The acts listed by the *Spies* court were: "keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal." *Id.* None of the acts specified in *Spies* apply to Mr. Coplan; the government's allegations in Count Five all presumably fall within the last catchall phrase.

evidence about such acts, which occurred in Maryland or in the District of Columbia, to try to prove Count One. *See Cabrales*, 524 U.S. at 9-10 (noting that the government was not precluded from introducing evidence of the money laundering that occurred in Florida as part of the charged conspiracy count in Missouri). It cannot, however, prosecute that conduct as an independent count in the Southern District. Count five should be dismissed for lack of venue.

      **B.    Venue For Count Eleven Does Not Lie In The Southern District Of New York.**

The allegedly false statements underlying Count Five were uttered by Mr. Coplan and received by IRS representatives during a deposition that was conducted entirely within the District of Columbia on a single day in June 2002. As these actual facts relating to where the statements were made and received are undisputed, venue for Count Eleven is improper in Southern District of New York. The Court should dismiss it.

Mr. Coplan is charged with a violation of 18 U.S.C. § 1001(a)(2), which states in relevant part:

> (a) . . . whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully — . . .
> (2) makes any materially false, fictitious, or fraudulent statement or representation . . .
> shall be fined under this title [and/or] imprisoned not more than 5 years.

18 U.S.C. § 1001(a)(2).

The elements of a § 1001 violation are:

> First, on or about the date specified, the defendant made a statement or representation;
> Second, the statement or representation was material;
> Third, that the statement was false, fictitious, or fraudulent;
> Fourth, the false, fictitious, or fraudulent statement was made knowingly and willfully; and

10

>Fifth, the statement or representation was made in a matter within the jurisdiction of the government of the United States.

2 Leonard B. Sand *et al.*, Modern Federal Jury Instructions ¶ 36.01, Instr. 36-9 (updated through December 2007).  As both the statute itself and the standard jury instructions indicate, the only *conduct* element of § 1001(a)(2) is the making of a statement.

Section 1001 does not contain a venue provision.  "Venue under Section 1001 lies where the false statement was *completed*."  *United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir. 1990) (emphasis added).  In some cases, conduct under § 1001 has been treated as a "continuing offense" because the particular facts of the case indicated that the making and/or completion of the false statement was extended in time or place.  In *Stephenson*, for example, the Second Circuit found venue proper in the Southern District where a false statement uttered by phone in Washington, DC, was received by a federal agent on the other end of the line in New York.  *Id.*  However, the continuing offense approach to venue only applies to crimes with "distinct parts" or that involve "a continuously moving act."  *Travis v. United States*, 364 U.S. 631, 636 (1961).

That is not the case here.  In this case, the alleged criminal making of false statements did not involve distinct parts, a "continuously moving act," or one "set on foot by a single impulse and operated by unintermittent force."  *See Midstate Horticultural*, 306 U.S. at 166.  Once Mr. Coplan uttered the statements to the government representatives in attendance at his June 2002 deposition in Washington, DC, the act was completed.

In all pertinent factual respects, this case is closely analogous to the *Bin Laden* case from this district.  *See United States v. Bin Laden*, 146 F. Supp. 2d 373 (S.D.N.Y. 2001).  In that case, the government charged one of the defendants, Wadih El Hage, with a violation of the same false statements provision at issue here – 18 U.S.C. § 1001(a)(2).  The government claimed El Hage had made false statements during an interview with federal agents in Arlington, Texas.  Judge

11

Sand rejected the government's contention that this charge was properly brought in the Southern District, finding that the alleged conduct – the issuance of the statements and the receipt of those statements by the government – had occurred entirely in Texas. 146 F. Supp. 2d at 377. As a result, the court properly held the "continuing offense" doctrine under 18 U.S.C. § 3237 inapplicable: "Since there was no geographic (or even temporal) discontinuity, the offense charged in Count 308 began, continued, and was completed in just one federal judicial district – i.e., the Northern District of Texas." *Id.* Examination of Mr. Coplan's alleged violation of § 1001(a)(2) yields the same conclusion – there was no geographic or temporal discontinuity, and the offense charged in Count 11 began, continued, and was completed all in the District of Columbia.

Moreover, there is no allegation or statement in the indictment that government representatives located in the Southern District were the actual or intended recipients of Mr. Coplan's June 2002 statements. In this respect, this case differs markedly from *United States v. Mahaffy*, NO. 05-CR-613, 2006 WL 2224518 (E.D.N.Y. 2006). In *Mahaffy*, the government brought charges of § 1001 violations in the Eastern District of New York against two defendants for statements made in the Southern District. The court denied these defendants' pretrial motion to dismiss for improper venue. 2002 WL 2224518 at *10. In that case, however, the indictment alleged that one defendant was informed prior to testifying that his testimony would be shared with prosecutors in the Eastern District; and the indictment also alleged that the other defendant was aware that the United Sates Attorney for the Eastern District had opened an investigation on the subject of the defendant's testimony. *Id.* at *8. Here, by contrast, other than the plainly inaccurate factual allegation that the statements were made "in the Southern District of New

12

York and elsewhere," the indictment contains no allegations to support a finding that venue for this count is proper in the charging district.

Here, the government decided to take Mr. Coplan's testimony in Washington, D.C. It would be an abuse of prosecutorial power, and contrary to the very principles underlying the constitutional venue provisions, if the government were permitted to bring false statement prosecutions in the district of its choosing simply by transferring the transcript of those completed statements to its preferred district after the statements have been made and received by the government. In sum, the government's interest in prosecuting Mr. Coplan in New York for statements made in Washington, D.C., must yield to the requirement that Mr. Coplan be tried in a venue permitted by the Constitution, the Supreme Court, and courts of this Circuit. The Court should dismiss Count Eleven.[5]

## CONCLUSION

For the foregoing reasons, the Court should grant the instant motion and dismiss Counts Five and Eleven from the superseding indictment.

Date: May 5, 2008                           Respectfully submitted,

                                            Zuckerman Spaeder LLP

                                             /s/   Paula M. Junghans_____
                                            Paula M. Junghans (admitted *pro hac vice*)
                                            M. Sandy Weinberg (admitted *pro hac vice*)
                                            Andrew N. Goldfarb (admitted *pro hac vice*)
                                            1800 M Street, NW, Suite 1000
                                            Washington, DC 20036-5802
                                            Telephone: (202) 778-1800
                                            Facsimile: (202) 822-8106

                                            Attorneys for Robert Coplan

---

[5] As with Count Five, the government has included Mr. Coplan's allegedly false statements as overt acts in furtherance of the conspiracy charged in Count One. The government may introduce evidence about the statements to try to prove Count One, but it cannot prosecute that conduct as a separate count in the Southern District.

13