UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| ROBERT COPLAN, | ) |
| MARTIN NISSENBAUM, | ) |
| RICHARD SHAPIRO, | )    (S1) 07 Cr. 453 (SHS) |
| BRIAN VAUGHN, | ) |
| DAVID L. SMITH, and | ) |
| CHARLES BOLTON | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF THE
## DISCOVERY MOTIONS FILED ON BEHALF OF ALL DEFENDANTS

MORVILLO, ABRAMOWITZ, GRAND,
  IASON, ANELLO & BOHRER, P.C.
Attorneys for Richard Shapiro
565 Fifth Avenue
New York, NY 10017
(212) 856-9600

Of Counsel:
John J. Tigue, Jr.
Jeremy H. Temkin
Kristy Watson Milkov
Matthew B. Homberger (pending admission)

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................... 1

    A.  Background ...................................................................................... 1

    B.  The Indictment ............................................................................... 2

    C.  Defendants' Discovery and Bill of Particulars Requests ................... 3

ARGUMENT .................................................................................................. 5

POINT I

    A Bill of Particulars Is Necessary and Appropriate ............................... 5

        A.  The Applicable Law ...................................................................... 5

        B.  The Court Should Order The Government To File A Bill Of Particulars .......... 7

            1.  The Government Should Be Required To Specify The
               Transactions It Intends To Prove At Trial ............................... 7

            2.  The Government Should Be Required To Specify the
               "Other Things" Encompassed In the Indictment ..................... 9

            3.  The Government Should Be Required To Specify the
               Co-Conspirators Referenced in the Indictment ..................... 11

POINT II

    The Government Should Be Compelled To Identify The Documents That It
    Intends To Use At Trial By December 24, 2008 ....................................... 13

POINT III

    The Government Should Be Ordered To Make Timely Production Of Brady,
    Giglio And Jencks Act Materials ........................................................... 16

POINT IV

    The Defendants Should Be Provided With A Witness List No Later Than
    December 24, 2008 ................................................................................................20

POINT V

    The Government Should Be Directed To Disclose Rule 404(b) Evidence No
    Later than February 1, 2009 ..................................................................................23

CONCLUSION ................................................................................................................24

# TABLE OF AUTHORITIES

## Cases

Brady v. Maryland, 373 U.S. 83 (1963) ..................................................... *passim*

Dennis v. United States, 384 U.S. 855 (1966) .................................................14

Giglio v. United States, 405 U.S. 150 (1972) ............................................. *passim*

In re United States, 267 F.3d 132 (2d Cir. 2001) ........................................17, 18

United States v. Bagley 473 U.S. 667 (1985) ....................................................17

United States v. Bin Laden, 92 F. Supp. 2d 225 (S.D.N.Y. 2000) ........................6, 7, 8, 12

United States v. Blech, No. 05-Cr. 3600 (2d Cir. April 23, 2008) ....................................18

United States v. Bortnovsky, 820 F.2d 572 (2d Cir. 1987) ..........................................5, 6, 8

United States v. Cannone, 528 F.2d 296 (2d Cir. 1975) ........................................ 15-16, 20

United States v. Chalmers, 474 F. Supp. 2d 555 (S.D.N.Y. 2007) ....................................15

United States v. Coppa, 267 F.3d 132 (2d Cir. 2001) ..........................................17

United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988) ....................................5, 9, 10, 11

United States v. Feola, 651 F. Supp. 1068 (S.D.N.Y. 1987) ..............................................11

United States v. Ganim, 225 F. Supp. 2d 145 (D. Conn. 2002) ....................................9, 10

United States v. Giffen, 379 F. Supp. 2d 337 (S.D.N.Y. 2004) ....................................14, 15

United States v. Laughlin, 768 F. Supp. 957 (N.D.N.Y. 1991) ..........................................15

United States v. Lino, No. 00 Cr. 632, 2001 WL 8356
    (S.D.N.Y. Jan. 2, 2001) ..............................................................................9, 11, 15

United States v. Livoti, 8 F. Supp. 2d 246 (S.D.N.Y. 1998) ..............................................23

United States v. Mango, No. 96 Cr. 327, 1997 WL 222367
    (N.D.N.Y. May 1, 1997) ..................................................................................6

United States v. Martinez-Martinez, No. 01 Cr. 307, 2001 WL 1287040
    (S.D.N.Y. Oct. 24, 2001) ...........................................................................18

United States v. McDonald, No. 01 Cr. 1168, 2002 WL 2022215
    (E.D.N.Y. Aug. 6, 2002)..............................................................14, 19, 21, 23

United States v. Nachamie, 91 F. Supp. 2d 565 (S.D.N.Y. 2000)...........6, 7, 11, 12, 13, 15

United States v. Poindexter, 727 F. Supp. 1470 (D.D.C. 1989) .........................................15

United States v. Pope, 189 F. Supp. 12 (S.D.N.Y. 1960) ...................................................11

United States v. Rosenthal, No. 91 Cr. 412, 1991 WL 267767
    (S.D.N.Y. Dec. 3, 1991)...........................................................................11, 21

United States v. Savin, No. 00 Cr. 45, 2001 WL 243533
    (S.D.N.Y. Mar. 7, 2001) .............................................................................5, 7, 21

United States v. Siddiqi, No. 06 Cr. 377, 2007 WL 549420
    (S.D.N.Y. Feb. 21, 2007).....................................................................................5

United States v. Strawberry, 892 F. Supp. 519 (S.D.N.Y. 1995) .........................................6

United States v. Turkish, 458 F. Supp. 874 (S.D.N.Y. 1978),
    aff'd, 673 F.2d 679 (2d Cir. 1980)...............................................15, 20, 21, 22

United States v. Upton, 856 F. Supp. 727 (E.D.N.Y. 1994)...................................14, 15, 21

United States v. Walker, 922 F. Supp. 732 (N.D.N.Y. 1996)................................................6

United States v. Weissman, No. 94 Cr. 760, 1996 WL 751385
    (S.D.N.Y. Dec. 26, 1996)..................................................................................15

## Rules & Statutes

18 U.S.C. § 2...........................................................................................................2-3

18 U.S.C. § 1001........................................................................................................2

18 U.S.C. § 3500.........................................................................................................4

26 U.S.C. § 7201......................................................................................................2, 3

26 U.S.C. § 7206.........................................................................................................3

26 U.S.C. § 7212 .................................................................................................2

Fed. R. Crim. P. 7(f) .........................................................................................5

Fed. R. Crim. P. 16 ...........................................................................4, 13, 14, 15

Red. R. Evid. 404(b) ..................................................................................1, 23, 24

## PRELIMINARY STATEMENT

Defendants Robert Coplan, Martin Nissenbaum, Richard Shapiro, Brian Vaughn and Charles Bolton respectfully submit this memorandum of law in support of their motion for an order directing the government (a) to provide a bill of particulars; (b) to identify documents that it intends to offer at trial by no later than December 24, 2008; (c) to make timely production of Brady, Giglio and Jencks Act materials; (d) to provide a witness list by no later than December 24, 2008; and (e) to identify any evidence it intends to offer pursuant to Rule 404(b) of the Federal Rules of Evidence no later than February 1, 2009.[1]

## STATEMENT OF FACTS

### A.  Background

According to the government, this case arises out of the defendants' involvement in the marketing and promotion of "tax shelters" by Ernst & Young ("E&Y"). During most of the period covered by the Indictment (1998 through 2006), defendants Coplan, Nissenbaum and Shapiro were partners at E&Y and Vaughn was a manager (and later became a partner) at the firm (together, the "E&Y Defendants"). Coplan was the head of the Strategic Individual Solutions Group ("SISG"), which marketed and promoted the tax shelter transactions identified in the Indictment. Nissenbaum and Shapiro, in addition to their other responsibilities at E&Y, provided technical tax expertise to SISG. Vaughn was a salesperson for SISG. Bolton was the owner of an investment management company, Bolton Capital Planning, that served as a general partner and investment manager for most of the partnerships that participated in the Contingent Deferred Swap ("CDS") and the CDS Add-On ("Add-On") transactions that were marketed and promoted by E&Y. Smith was the owner of an investment management company, Private

---

[1] Defendant David L. Smith has yet to appear in this case.

Capital Management Group, which served as a general partner and investment manager for the rest of the partnerships that participated in the CDS and Add-On transactions.

## B.    The Indictment

On May 22, 2007, after a three-year investigation by the government, a grand jury returned an eight-count indictment charging defendants Coplan, Nissenbaum, Shapiro and Vaughn with one count of participating in a conspiracy to defraud an agency of the United States, to wit, the Internal Revenue Service ("IRS"); to evade their own income taxes and the income taxes owed by E&Y clients and several other E&Y partners; to corruptly obstruct and impede the due administration of the internal revenue laws; and to make false statements to the IRS. The initial indictment also charged (a) Coplan, Nissenbaum and Shapiro each with a single count of tax evasion, in violation of 26 U.S.C. § 7201; (b) Coplan and Nissenbaum each with a single count of obstruction of the due administration of the internal revenue laws in violation of 26 U.S.C. § 7212; and (c) Coplan and Vaughn each with a single count of making false statements to the IRS, in violation of 18 U.S.C. § 1001.

On February 19, 2008, a grand jury returned a superseding indictment (the "Indictment").[2] The Indictment contains thirteen counts and adds two additional defendants – Bolton and Smith. It retains all of the charges contained in the original indictment, adds Bolton and Smith to the conspiracy alleged in Count One, and removes obstruction of the due administration of the internal revenue laws as an object of that conspiracy. Counts Two through Four charge the Defendants with aiding and abetting the income tax evasion of three E&Y clients that invested in CDS and/or the Add-On, in violation of 26 U.S.C. § 7201 and 18 U.S.C. §

---

[2] A copy of the Indictment is annexed to the Affidavit of John J. Tigue, Jr. in Support of Defendant Richard Shapiro's Pre-Trial Motions sworn to May 5, 2008 (the "Tigue Aff." or the "Tigue Affidavit"), as Exhibit A.

2. Finally, the Indictment charges Smith with a single count of tax evasion, in violation of 26 U.S.C. § 7201 and a single count of filing a false tax return, in violation of 26 U.S.C. § 7206(1).

The Indictment alleges that the defendants "participated in a scheme to defraud the IRS by designing, marketing, implementing and defending tax shelters using means and methods intended to deceive the IRS about the bona fides of those shelters, and about the circumstances under which the shelters were marketed and implemented." (Indictment ¶ 13.)  The Indictment goes to great lengths to describe *generally* the four types of tax shelter transactions with which the defendants were involved.  For example, the *typical* CDS transaction is described in paragraphs 21 through 26 of the Indictment.  However, although the Indictment makes clear that E&Y clients entered into a total of 218 of these four types of transactions (Indictment ¶¶ 21, 27, 35, 54), other than the three CDS and/or Add-On transactions identified in Counts Two, Three and Four and the COBRA-like transaction identified as the basis for Counts Five, Six and Seven, the government has not indicated which transactions it intends to prove at trial.[3]

**C.    Defendants' Discovery and Bill of Particulars Requests**

On June 22, 2007, the government began providing discovery to the defendants.  Since that time, the government has produced over 15 million pages of electronic discovery and 155 boxes of hard copy documents from at least 20 sources, and continues to produce more discovery on a regular basis. Tigue Aff., ¶ 4.[4]  In addition, the government has produced a separate box of "core documents," which it identified as being "significant."  The electronic discovery provided by the government has, generally, been contained in word searchable databases.  Moreover, the

---

[3] Paragraphs 21, 27, 35 and 54 of the Indictment indicate on their face that 402 E&Y clients entered into the four types of transactions at issue.  Some E&Y clients entered into more than one transaction.  Based on the defendants' review of the documents produced thus far, it appears that approximately 325 separate E&Y clients entered into the four types of transactions at issue. Tigue Aff., ¶ 6.

[4] As recently as April 18, 2008, the government informed defendants that it would be producing approximately 60-70 GB of additional electronic discovery.  That is equivalent to approximately 1 million pages of data.  This additional discovery is included in the over 15 million pages cited in the text. Tigue Aff., ¶ 4.

3

government has provided defendants with indices for several of the collections it has produced.
Although these tools are of some assistance in defendants' review of the massive volume of
discovery, defendants are still faced with the Herculean task of searching through, sorting and
analyzing a staggering number of documents in order to prepare for trial. Id., ¶ 5.

By letter dated March 24, 2008, defendants made a formal request for more particularized
items of discovery pursuant to the Federal Rules of Criminal Procedure, Brady v. Maryland, 373
U.S. 83 (1963), and its progeny, and 18 U.S.C. § 3500 (the "March 24 Discovery Request"). (A
copy of the March 24 Discovery Request is annexed to the Tigue Affidavit as Exhibit B.) In a
letter dated April 15, 2008, the government responded to the March 24 Discovery Request,
stating that it "has and will continue to comply in good faith with its discovery obligations" and
that it has provided discovery well beyond that required by Rule 16 of the Federal Rules of
Criminal Procedure. (A copy of the government's April 15, 2008 letter is annexed to the Tigue
Affidavit as Exhibit D.)[5]

Faced with the breadth of the government's allegations, on April 9, 2008, counsel for
Nissenbaum submitted a letter to the government requesting particulars on behalf of the
defendants (the "Nissenbaum Particulars Request"). (A copy of the Nissenbaum Particulars
Request is annexed to the Tigue Affidavit as Exhibit C.)[6] In a letter dated April 22, 2008 (the
"Government's Particulars Response"), the government responded to the defendants' requests
for a bill of particulars, asserting that "[i]n light of the detailed allegations set forth in the
[Indictment], and the voluminous discovery provided by the Government, no bill of particulars is

---

[5] As detailed in paragraphs 19 and 20 and Exhibit J of the declaration of James B. Tucker, Esq., filed in support of
the defendant Brian Vaughn's omnibus motion for pretrial relief, the government has agreed to attempt to resolve, in
advance of the trial, the Confrontation Clause issues which might be presented by the use of testimonial statements
of co-conspirators. That issue, therefore, is not addressed in this motion.

[6] Counsel for Shapiro submitted a separate request on April 24, 2008, a copy of which is annexed to the Tigue
Affidavit as Exhibit G.

warranted here." (A copy of the Government's Particulars Response is annexed to the Tigue

Affidavit as Exhibit F.) The government did not distinguish between the various requests for

particulars; it simply rejected all of the requests out of hand.

The requests that are the subject of this motion seek three categories of information

without which defense counsel will be substantially hindered in their preparation of a defense.

These requests are:

- identification of the specific transactions the government intends to prove at trial;

- identification of unspecified "other things," "other steps," "other ways," "other
  entities," and other similar constructions that appear in paragraphs 8, 31, 32,
  33(a), 33(b), 33(c), 34, 51, 58, 62(a), 62(b), 62(c), 62(d), 65, 66, 67, 78, 79, 86,
  87, 89, 96, 96(g), 97, 103, 105, 110, 113, 120, 122, 124, 127, 140, and 141 of the
  Indictment; and

- identification of the co-conspirators referenced within the Indictment.

## ARGUMENT

### POINT I

### A Bill of Particulars Is Necessary and Appropriate

**A.    The Applicable Law**

Rule 7(f) of the Federal Rules of Criminal Procedure provides for a bill of particulars in

order to permit the defendant to identify with sufficient particularity the nature of the pending

charges, thereby enabling him to prepare for trial, to prevent surprise, and to interpose a plea of

double jeopardy should he be prosecuted a second time for the same offense. See United States

v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); see also United States v. Davidoff, 845 F.2d

1151, 1154 (2d Cir. 1988) (quoting Bortnovsky, 820 F.2d at 574); United States v. Siddiqi, No.

06 Cr. 377, 2007 WL 549420, *2 (S.D.N.Y. Feb. 21, 2007) (Kram, J.); United States v. Savin,

No. 00 Cr. 45, 2001 WL 243533, *2 (S.D.N.Y. Mar. 7, 2001) (Sweet, J.).

In determining whether to grant a bill of particulars, the Court's decision should be "informed by considerations of whether the requested particularization is necessary to defendant's preparation for trial and avoidance of unfair surprise at trial." United States v. Strawberry, 892 F. Supp. 519, 526 (S.D.N.Y. 1995) (Parker, J.). The Court "must examine the totality of the information available to the defendant" and determine "whether, in light of the charges that the defendant is required to answer, the filing of a bill of particulars is warranted." United States v. Bin Laden, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000) (Sand, J.); see also United States v. Mango, No. 96 Cr. 327, 1997 WL 222367, *9 (N.D.N.Y. May 1, 1997) (courts should consider "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise available to the defendants") (quoting United States v. Walker, 922 F. Supp. 732, 739 (N.D.N.Y. 1996)). The Second Circuit has made clear, however, that the government does "not fulfill its obligation [to inform the defendants of the charges] merely by providing mountains of documents to defense counsel." Bortnovsky, 820 F.2d at 575. "It is no solution to rely solely upon the quantity of information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars." Bin Laden, 92 F. Supp. 2d at 234.

A voluminous document production by the government was found to support, not undercut, defendants' need for a bill of particulars in United States v. Nachamie, 91 F. Supp. 2d 565 (S.D.N.Y. 2000) (Scheindlin, J.). In Nachamie, defendants were charged with conspiracy to commit Medicare fraud, and the government produced over "200,000 pieces of paper," relating to 2,000 Medicare claims. Id. at 571. However, the government had not informed the defendants which of these claims were alleged to have been false. Id. Relying on Bortnovsky, the Court directed the government to specify, inter alia, each false and misleading claim

6

allegedly submitted and/or filed as part of the conspiracy, as well as each item, statement, or entry on each document alleged to be false or fraudulent. Nachamie, 91 F. Supp. 2d at 574-75.

In Bin Laden, the Court, relying upon Bortnosvky and Nachamie, directed the government to provide particulars despite the fact that the indictment listed over 144 overt acts and the discovery consisted of hundreds of thousands of documents, dozens of audio and video tapes, and other materials. Bin Laden, 92 F. Supp. 2d at 232. In addition to ordering the government to particularize allegations concerning defendants' "travel" and "business" activities relating to an international terrorist organization, id. at 236, the Court required particularization of the "coded correspondence" in which two defendants allegedly engaged in furtherance of the conspiracy. Id. at 240. Significantly, the Court reasoned that it is in the nature of "coded correspondence" that the documents are not self-identifying. Id. Thus, without additional identifying information, it would have been impossible for the defendants to determine the documents referenced in the indictment. Id.; see also Savin, 2001 WL 243533. at *3-4 (ordering government to provide particulars because without further information about the charges the defendant would be forced to "comb through [a] veritable mountain of [100,000] documents" to "adequately understand the nature of the charges against him").

**B.    The Court Should Order The Government To File A Bill Of Particulars**

### 1. The Government Should Be Required To Specify The Transactions It Intends To Prove At Trial.

The defendants here are in the same, if not worse, predicament as the defendants in Nachamie, Bin Laden and Savin. The Indictment here charges a broad and complex conspiracy. The government has produced over 15 million pages of electronic discovery and 155 boxes of hard copy discovery from at least 20 different sources. At a minimum, the defendants must be able to identify the specific transactions that will be at issue during trial. However, with the

7

exception of the transactions at issue in Counts Two through Seven, the transactions that the government intends to prove at trial cannot be identified through the allegations in the indictment or the "mountains of discovery," <u>Bortnovsky</u>, 820 F.2d at 575, provided by the government. In fact, the discovery provided by the government includes transaction documents, correspondence and emails related to all of the 218 transactions implemented by approximately 325 E&Y clients, as well as documents related to clients that ultimately decided not to enter into any of the transactions at issue. Tigue Aff., ¶ 6. This is exactly the kind of case the <u>Bin Laden</u> court had in mind when it contemplated a situation where the "large volume of material disclosed is precisely what necessitates a bill of particulars." <u>Bin Laden</u>, 92 F. Supp. 2d at 234.

Without identification of the transactions the government intends to prove at trial (other than the transactions specified in Counts Two through Seven of the Indictment), the defendants will be forced to prepare for trial as if all 218 transactions will be at issue. That would result in an unnecessary waste of time and resources and would prevent defense counsel from focusing on the important issues in the case.[7] Furthermore, the problem can be easily cured if the Court exercises its discretion and orders the government to file a bill of particulars identifying the specific transactions about which the government intends to present evidence at trial.[8]

---

[7] Defense counsel understands that, at trial, the government intends to offer a summary chart listing all of the transactions in question, and will present detailed evidence as to only a subset of transactions. The prosecutor has informed defense counsel that she will identify the specific transactions that will be the subject of a detailed presentation as the trial date approached. <u>See</u> Tigue Aff., ¶ 15. The promise to identify certain transactions as the trial date approaches does not obviate defense counsel's concerns regarding its ability to use its limited resources to prepare for trial efficiently.

[8] The Nissenbaum Particulars Request asked the government to specify whether "with respect to each of the tax shelters as to which the government intends to offer proof [it is alleging] that the tax shelter was fraudulent as designed and approved by [E&Y]." <u>See</u> Tigue Aff., Exhibit C, at 6. The government did not respond to that request. If the government is willing to commit to the position that the sole misconduct at issue in the Indictment relates to the design and approval of the transactions as opposed to the execution of the transactions and that such misconduct is uniform with respect to each and every transaction of a given type (<u>i.e.</u>, each and every CDS transaction), then we will withdraw our request to have the government identify the specific transactions it intends to prove at trial because no transaction would have any unique characteristic related to its execution that would be relevant to the defense.

### 2. The Government Should Be Required To Specify the "Other Things" Encompassed In the Indictment

In at least thirty-four separate paragraphs or subparagraphs, the Indictment refers to "among other things," "among other steps," "among others," "among the ways," and "other entities." With respect to each of these occurrences, the defendants are unable to identify the additional items (e.g., things, reasons, statements, ways, etc.) to which the grand jury referred. These allegations leave open the possibility that, at trial, the government will attempt to prove the defendants' guilt through conduct beyond that set forth in the Indictment.

When faced with similar expansive language, courts have recognized that particulars of this type should be provided. See Davidoff, 845 F.2d at 1154-55 (reversing conviction based on trial court's failure to order particulars concerning extortion scheme presented at trial); United States v. Ganim, 225 F. Supp. 2d 145, 155 (D. Conn. 2002) (requiring particularization of allegation that certain improper gifts were accepted "among others"); see also United States v. Lino, No. 00 Cr. 632, 2001 WL 8356, at *5 (S.D.N.Y. Jan. 2, 2001) (Pauley, J.) (requiring particularization of unspecified categories of means and methods employed by criminal enterprise).

In Davidoff, the indictment contained a count alleging a RICO conspiracy, which included allegations that the charged extortion offenses "included, but were not limited to" extortions aimed at certain companies set forth in the four remaining counts of the indictment. Davidoff, 845 F.2d at 1153. At trial, the defendant was confronted with evidence of extortions aimed at companies not specified in the indictment. The Second Circuit reversed the ensuing conviction, finding that the trial judge had exceeded his discretion by denying a bill of particulars identifying the victims of the discrete extortionate schemes that the prosecution intended to prove. Id. at 1154. The Court reasoned that it was "simply unrealistic to think that a defendant

9

preparing to meet charges of extorting funds from one company had a fair opportunity to defend against allegations of extortions against unrelated companies." Id.

The district court in Ganim avoided the situation that occurred in Davidoff by ordering appropriate particulars. In Ganim, the mayor of Bridgeport, Connecticut was charged with engaging in a racketeering enterprise, the *modus operandi* of which was alleged to consist of the solicitation and acceptance of bribes from companies and individuals seeking to do business with the city. Id. at 148. The defendant sought particularization with respect to a paragraph in the indictment that alleged that certain specific gifts were accepted, "among others." Id. at 155. In ordering the government to particularize the benefits allegedly received by the defendant, the Court recognized that the "veneer of precision" provided by the specific examples "evaporate[d] upon closer examination," due to the insertion of the phrase "among others." Id. Without particularization, the Court reasoned, the indictment gave insufficient notice of the benefits alleged to have been received. Id.

The Indictment here, massive as it is, creates the distinct possibility that the government will seek to prove conduct beyond that which is described in it. As with the indictment at issue in Gamin, particulars should be granted concerning each paragraph of the Indictment that includes the phrases, "among other things," "among other steps," "among others," "among the ways," and "other entities." (See Indictment, ¶¶ 31, 32, 33(a), 33(b), 33(c), 58, 62(a), 62(b), 62(c), 62(d), 65, 66, 67, 78, 79, 86, 87, 89, 96, 96(g), 97, 105, 113, 122, 124, 125, 127, 140, and 141; see also id. ¶¶ 8, 34, 51, 103, 110 and 124.) Many of these paragraphs leave open the possibility that the government will attempt to prove false statements beyond those specified in the Indictment. (See, e.g., id., ¶¶ 62(a)-62(d), 66, 67, 78 and 89.) Absent such particulars, the

defendants are left without sufficient notice as to the charges against them, and the government

may seek to introduce new, uncharged conduct at trial, as was done in <u>Davidoff</u>.[9]

### 3. The Government Should Be Required To Specify the Co-Conspirators Referenced in the Indictment

In no fewer than fifteen paragraphs, the Indictment alleges that the defendants acted with

unnamed co-conspirators, which it denominated either as "co-conspirators" or "others known

and unknown." (<u>See</u> Indictment, ¶¶ 13-16, 18, 23(c), 23(f), 26, 26(d), 29, 30(e), 31, 33, 53, 59.)

The defendants requested a listing of all co-conspirators, <u>see</u> Tigue Aff., Exhibit C, ¶ 4, as well

as the co-conspirators referenced in specific allegations, <u>see id.</u>, ¶¶ 5, 13, 14, 21.  The

government rejected these requests.  <u>See</u> Tigue Aff., Exhibit F.

"Requests for names of unindicted co-conspirators are fairly common and often are

granted by district courts."  <u>Lino</u>, 2001 WL 8356, at *12; <u>see</u> <u>Nachamie</u>, 91 F. Supp. 2d at 572-

73 (requiring government to provide the names of any known unindicted co-conspirators);

<u>United States v. Rosenthal</u>, No. 91 Cr. 412, 1991 WL 267767, *7 (S.D.N.Y. Dec. 3, 1991)

(Stanton, J.) (ordering government to disclose identities of other persons who took part in the

charged offenses, and a general description of the alleged role of each such person); <u>United</u>

<u>States v. Feola</u>, 651 F. Supp. 1068, 1131-34 (S.D.N.Y. 1987) (Brieant, J.) (granting particulars

specifying names of all persons whom the government would claim at trial were co-conspirators,

and of all persons known to have been present when the alleged overt and substantive acts

occurred).

---

[9] In making the instant motion for a bill of particulars, defendants do not waive their right to seek further relief concerning the allegations of "among other things," "among other steps," "among others," "among the ways," and "other entities," including a motion to strike. <u>See</u> <u>United States v. Pope</u>, 189 F. Supp. 12, 25-26 (S.D.N.Y. 1960) (Weinfeld, J.). <u>See</u> Memorandum of Law In Support of Defendant Richard Shapiro's Pre-Trial Motions at Point III.C.

11

In Nachamie, the Court addressed six factors as being among those that are helpful to courts in determining whether a defendant is entitled to the names of his unnamed co-conspirators: the number of co-conspirators; the duration and breadth of the alleged conspiracy; whether the government has otherwise provided adequate notice of the particulars; the volume of pretrial disclosure; the potential danger to co-conspirators and the nature of the alleged criminal conduct; and the potential harm to the government's investigation. Nachamie, 91 F. Supp.2d at 572; see also Bin Laden, 92 F. Supp.2d at 241 (requiring the government to disclose the identities of all unindicted co-conspirators to whom it would refer at trial, unless it made a particularized determination, in good faith, that disclosure of a particular person's identity would either cause a significant risk of bodily harm or compromise an ongoing investigation).

Here, each of the factors supports requiring the requested particulars concerning co-conspirators. First, the number of unindicted co-conspirators potentially is quite large, consisting of anyone who might have "designed, marketed, implemented, and defended" the tax shelters. (See Indictment, ¶¶ 13-14.) This plausibly includes hundreds of employees of E&Y and other professionals whose actions touched the tax shelter transactions in some way over the period covered by the Indictment. Second, according to the government, the alleged conspiracy lasted almost eight years and involved many complicated financial transactions and numerous parties and entities. Third, the government has not yet provided any notice of the identity of the alleged co-conspirators. Fourth, the volume of pretrial disclosure (and the number of persons referenced within it) is so great that it is very difficult to glean from it the names of defendants' alleged co-conspirators. See Tigue Aff., ¶ 4. Fifth, given the nature of the conspiracy alleged, particularization of co-conspirators will not result in potential danger to the co-conspirators.

12

Sixth, given the passage of time, it is unlikely that the identification of alleged co-conspirators will impact a continuing investigation.

In short, each of the factors that supported particularization in Nachamie is present here. Under the circumstances, particularization of the alleged co-conspirators is necessary to permit the defendants adequately to prepare for trial and to avoid undue surprise.

## POINT II

### The Government Should Be Compelled To Identify The Documents That It Intends To Use At Trial By December 24, 2008

Defendants' March 24 Discovery Request asked the government to specify the documents it intends to use at trial in its case in chief. See Tigue Aff., Exhibit B, ¶ 6. In its April 15 letter the government did not directly respond to that request; it merely asserted that it had and would continue to comply with its discovery obligations. See Tigue Aff., Exhibit D, at 2. Given the volume of documents in this case – over 15 million pages of electronic discovery plus an additional 155 boxes of paper discovery – as well as the breadth of the allegations in the Indictment, the identification of those documents that the government intends to offer in its case-in-chief is essential to enable the defendants to prepare for trial, and the Court should require the government to identify those documents pursuant to Rule 16 of the Federal Rules of Criminal Procedure.[10]

The Federal Rules of Criminal Procedure reflect a liberal policy of disclosure adopted by the Supreme Court: "[There is] a growing realization that disclosure, rather than suppression, of

---

[10] Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure provides that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy . . . documents . . . within the government's possession, custody, or control" that are "material to preparing the defense," that the "government intends to use . . . in its case-in-chief at trial" or that were "obtained from or belong[] to the defendant." Fed R. Crim. P. 16(a)(1)(E). This requirement previously appeared at Rule 16(a)(1)(C) and most of the court opinions cited herein refer to that subsection of Rule 16. Because prior Rule 16(a)(1)(C) and current Rule 16(a)(1)(E) are identical we refer to the rule as Rule 16(a)(1)(E) for the sake of clarity.

13

relevant materials ordinarily promotes the proper administration of criminal justice. . . . It is also reflected in the expanding body of materials, judicial and otherwise, favoring disclosure in criminal cases analogous to the civil practice." Dennis v. United States, 384 U.S. 855, 870-71 (1966). Numerous courts have held that, in a document intensive case such as this, Rule 16(a)(1)(E) obligates the government to identify specifically those documents that it intends to offer in its case-in-chief at trial. United States v. Giffen, 379 F. Supp. 2d 337, 344 (S.D.N.Y. 2004) (Pauley, J.) (directing government to provide an exhibit list before trial to "ensure an efficient presentation at trial"); United States v. McDonald, No. 01 Cr. 1168, 2002 WL 2022215, *3 (E.D.N.Y. Aug. 6, 2002) (quoting United States v. Upton, 856 F. Supp. 727, 747-48 (E.D.N.Y. 1994)) (directing government to provide an exhibit list before trial and noting with approval Judge Glasser's decision in Upton and the statement that "where there are thousands of documents [the purpose of requiring the government to provide an exhibit list] is to allow the defendant to adequately prepare for his or her defense"). Further, district courts have the inherent power to enter discovery orders beyond the specific language of Rule 16. See Giffen, 379 F. Supp. 2d at 344. Rule 16 is "intended to prescribe the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." Fed. R. Crim. P. 16, Advisory Committee Report (1974 Amendment).

In Upton, applying the text of Rule 16(a)(1)(E), citing the volume of discovery and scope of the allegations, the Honorable I. Leo Glasser required the government to identify the documents it intended to rely upon at trial. Upton, 856 F. Supp. at 747-48. Specifically, the Court held that "[t]he purpose of requiring the government to identify which documents it will rely upon at trial in a situation such as this – where there are thousands of documents – is to

allow the defendant to adequately prepare his or her defense." Id. at 748. Similarly, in United

States v. Turkish, 458 F. Supp. 874 (S.D.N.Y. 1978), aff'd, 673 F.2d 769 (2d Cir. 1980), the

Honorable Vincent L. Broderick required the government to identify the documents it intended

to offer in its case-in-chief in an effort to save the defendant from being "bur[ied] in paper," and

to comply with the requirements of Rule 16(a)(1)(E). Id. at 882; see also United States v.

Chalmers, 474 F. Supp. 2d 555, 573 (S.D.N.Y. 2007) (Chin, J.) (ordering government to provide

a preliminary trial exhibit list because, among other things, the government produced a large

volume of documents);[11] United States v. Weissman, No. 94 Cr. 760, 1996 WL 751385, at *1

(S.D.N.Y. Dec. 26, 1996) (Haight, J.) (government did not comply with the requirements of Rule

16 because it "produc[ed] masses of documents without designating which of them it will seek to

introduce at trial"); United States v. Laughlin, 768 F. Supp. 957, 967 (N.D.N.Y. 1991) (Court

ordered government to identify the specific documents it intended to use in its case-in-chief);

United States v. Poindexter, 727 F. Supp. 1470, 1484 (D.D.C. 1989) ("fairness to the defendant

[and] the protection of his rights" required the government to identify which of the 300,000

documents produced it intended to use in its case-in-chief).[12]

---

[11] In Chalmers, Judge Chin ordered the production of a preliminary trial exhibit list thirty days in advance of trial and a witness list ten days in advance of trial. See United States v. Chalmers, 474 F. Supp. 2d 555, 573 (S.D.N.Y. 2007). Although the defendants' proposed schedule for these documents seeks more advance notice than that which was provided in Chalmers, this additional notice is warranted in light of the complexity of this case and the anticipated length of the trial. Compare Tigue Aff., ¶ 8 (estimating that trial will last between four and one-half to six months) with Chalmers, 474 F. Supp. 2d at 572 ("[f]urthermore, the parties have informed the Court that they expect trial to last eight to nine weeks, with the Government's case-in-chief occupying six to eight of those weeks"). See also United States v. Weissman, No. 94 Cr. 760, 1996 WL 751385, at *1 (S.D.N.Y. Dec. 26, 1996) (making reference to a previous order directing the government to designate trial exhibits approximately two weeks prior to trial, where the government's case-in-chief was expected to last approximately four weeks).

[12] But see United States v. Nachamie, 91 F. Supp. 2d 565, 568-70 (S.D.N.Y. 2000) (Scheindlin, J.) (holding that, although Rule 16 requires the government to produce the documents it intends to use at trial, the clear language of the rule doesn't require the government to identify those documents separately from the other categories of documents it is required to produce pursuant to Rule 16). As recognized by Judge Pauley in Giffen, the decision in Nachamie conflicts with decisions by other courts in the Second Circuit that have held that "based on the policy concerns of Rule 16 and principles of fairness, it is within a district court's authority to direct the Government to identify the documents it intends to rely on in its case in chief." See Giffen, 379 F. Supp. 2d at 344 (citing Lino, 2001 WL 8356, at *19, Upton, 856 F. Supp. at 748, and Turkish, 458 F. Supp. at 882); see also United States v.

In the present case, the government has already produced over 15 million pages of electronic discovery and 155 boxes of hard copy documents from at least 20 sources. While the government has produced a separate box of "core documents" that it identified as being significant, has generally produced the electronic discovery in searchable databases, and has provided indices for several of the collections produced, given the broad allegations in the Indictment and the staggering number of documents produced, the defendants will still be forced to guess as to which of the non-core documents the government intends to introduce at trial. The defendants are diligently reviewing the voluminous discovery produced by the government, and can identify certain documents as likely government trial exhibits. However, in an effort to keep the defendants from being "buried in paper" and to facilitate an efficient use of the defendants' time and resources, the Court should follow the reasoned opinions of other district judges in similar cases and order the government to identify the documents that it intends to offer in its case-in-chief on December 24, 2008 (i.e., approximately two months before trial).[13]

## POINT III

### The Government Should Be Ordered To Make Timely Production Of Brady, Giglio And Jencks Act Materials

In the March 24 Discovery Request, defendants asked for the immediate production of all exculpatory evidence, including Brady and Giglio materials and, more specifically, production of impeachment material in the government's possession, custody or control or otherwise known to the government at least 90 days prior to the trial date. See Tigue Aff., Exhibit B, at 7-8. The

---

Cannone, 528 F.2d 296, 298 (2d Cir. 1975) (recognizing the inherent authority possessed by a district court to regulate the nature and the timing of discovery).

[13] We recognize that, as in all trials, the government's exhibit list is likely to change as the trial approaches. By asking the Court to order the government to produce an exhibit list on December 24, 2008, we are not seeking to preclude the government from using documents not included on that list. Rather, we anticipate that the government will prepare that list in good faith and supplement it between December 24, 2008 and the start of the trial. The same applies to the production of Jencks Act materials and a witness list discussed in Points III and IV, below.

government's April 15 letter does not respond to defendants' request for <u>Brady</u> and materials and claims that the request for impeachment materials is premature. <u>See</u> Tigue Aff., Exhibit D, at 3.

With respect to impeachment materials, in <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972), the Supreme Court held that "when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within the <u>Brady</u> rule." <u>Id.</u> at 154 (internal quotation omitted); <u>see also</u> <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985) (holding that "[i]mpeachment evidence . . . as well as exculpatory evidence falls within the <u>Brady</u> rule . . . so that if disclosed and used effectively, it may make the difference between conviction and acquittal"); <u>United States v. Coppa</u>, 267 F.3d 132, 139 (2d Cir. 2001) ("Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness.").

The Second Circuit addressed the timing of disclosure of exculpatory and impeachment material in <u>In re United States</u>, 267 F.3d 132 (2d Cir. 2001). In that case, the district court had ordered the government to make immediate production of all exculpatory and impeachment material to defendants charged in a multi-defendant stock fraud and money laundering case. <u>Id.</u> at 135-36. On a mandamus review, the Second Circuit addressed the materiality standard applicable to <u>Brady</u> and <u>Giglio</u> and the scope and timing of the government's disclosure obligation. The Court first noted that <u>Bagley</u> makes the *extent* of the disclosure required by <u>Brady</u> dependent on the anticipated *remedy* for a violation of the obligation to disclose: the prosecutor must disclose evidence if, without such a disclosure, a reasonable probability will exist that the outcome of a trial in which the evidence had been disclosed would have been different." <u>Id.</u> at 142 (emphasis in original).

17

The Court went on to hold that "the prosecutor must disclose 'material' . . . exculpatory and impeachment information no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made." Id.; see also id. at 144 ("we reiterate the longstanding constitutional principle that as long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner").

Thus, the Court granted the government's petition for mandamus because the district court's order required the production of all impeachment materials and thus improperly mandated the pre-trial disclosure of materials not meeting Brady's materiality threshold, but otherwise governed by the Jencks Act. Id. at 146. Significantly, the Court of Appeals left district judges with the discretion to order early production of impeachment materials to the defense based on "the particular circumstances of the case," and "as a matter of sound case management." Id.; see also United States v. Blech, No. 05-Cr. 3600, slip op. at 15-16 (2d Cir. April 23, 2008) (admonishing government for not disclosing Brady material earlier than the week of trial, "particularly when earlier discovery would not have had the potential to harm the witness" and where the government produced 200 boxes of materials well before trial but "withheld until .... [t]he eve of trial [] the evidence that the government counsel surely should have known defense counsel was most interested in").

Indeed, after In re United States, Judge Schwartz exercised this discretion and ordered that all Giglio material, including Giglio materials contained in materials to be provided under the Jencks Act, be produced no less than fourteen days prior to trial. See United States v. Martinez-Martinez, No. 01 Cr. 307, 2001 WL 1287040 at *5 (S.D.N.Y. Oct. 24, 2001) (Schwartz, J.). This order was based, in part, on the desire to ensure that the defendants will

18

"have sufficient time to make effective use of any <u>Giglio</u> material and [to] enable the parties and the Court to proceed to trial without undue delay or unnecessary continuances." <u>Id.</u>; <u>see also</u> <u>McDonald</u>, 2002 WL 2022215, at *1-2 (ordering the government to disclose all <u>Giglio</u> and Jencks Act material no later than four weeks before trial "in view of the scope of the indictment, the number of defendants and the documentary evidence implicated in [the] case").

The trial of this case will be both long and complicated. At the February 22, 2008 conference, the government estimated that the trial would take approximately three months, an estimate we believe to be exceedingly optimistic. <u>See</u> Tigue Aff., ¶ 8. While the government may believe that providing a particular piece of exculpatory or impeachment material in the middle of trial will be adequate to enable the defense to make use of that evidence, such untimely disclosure may necessitate significant delay to enable counsel to investigate the information provided. For example, <u>Giglio</u> material provided by the government frequently identifies acts of misconduct by witnesses, but gives only a partial recitation of the facts underlying the misconduct. Defense counsel then must conduct additional investigation to learn the context and details of the witness' misconduct in order to make effective use of the general information provided by the government. Thus, requiring production of impeachment material in advance of trial is necessary to enable defense counsel to investigate the relevant facts on a timely basis, thereby ensuring effective use of the materials without subjecting the Court and jury to unnecessary delays during trial.

Under the circumstances, defendants respectfully ask that the Court exercise its discretion as a matter of sound case management, and order the immediate production of all <u>Brady</u> material and the production of all <u>Giglio</u> material, including <u>Giglio</u> material contained in documents that the government is otherwise required to produce under the Jencks Act, no later than December 1,

19

2008 (i.e., approximately ninety days before the trial begins).  Moreover, in order to ensure the efficient use of time and avoid unnecessary delay during trial, defendants respectfully request that this Court direct the government to provide all Jencks Act materials no later than December 24, 2008 (i.e., approximately two months before the trial begins).[14]

POINT IV

**The Defendants Should Be Provided With
A Witness List No Later Than December 24, 2008**

In the March 24 Discovery Request, defendants also asked for a witness list, which the government has refused to provide because, its claims, the "request[] [is] premature." See Tigue Aff., Exhibit D, at 3.  In this case, the Court should exercise its discretion and direct the government to provide a witness list in order to enable the defendants to focus their pre-trial investigation and preparation, and to avoid unnecessary depletion of time and resources.

It is well-settled that the district court has the sound discretion to direct the government to provide a witness list prior to trial.  See Cannone, 528 F.2d at 299-300 ("the general discretion of district courts to compel the government to identify its witnesses is acknowledged widely").  In Turkish, Judge Broderick identified factors to be considered in deciding whether to order the government to provide a witness list.  See 458 F. Supp. at 881.  These factors include whether: (1) the charge involved a crime of violence; (2) the defendant has been arrested or convicted of a crime involving violence; (3) the evidence will consist largely of testimony related to documents; (4) supplying the list will increase the likelihood that the government's witnesses will either not appear or be unwilling to testify at trial; (5) the offense charged occurred over an extended

---

[14] In the March 24 Discovery Request, defendants asked that the government produce all Jencks Act materials no later than two months before the trial date, which was the schedule ordered by Judge Kaplan in the KPMG case. (See Tigue Aff., Exhibit B, at 7.)

period of time, making the preparation of a defense difficult; and (6) the defendant has the

financial wherewithal to conduct an extensive investigation of his own. Id. at 881.

These factors have been cited by other courts addressing the issue. See McDonald, 2002

WL 2022215, at *2 (discussing Turkish factors and ordering production of a witness list because

of non-violent crimes charged in indictment, complexity of case and length of investigation);

Savin, 2001 WL 243533, at *6-9 (discussing Turkish factors and ordering production of a

witness list despite government contention that much of the trial evidence would relate to

statements at meetings and telephone calls and fact that defendant had retained counsel);

Rosenthal, 1991 WL 267767, *4-5 (citing Turkish and ordering production of a witness list in

case involving voluminous documentary evidence and underlying events allegedly spanning

several years requiring extensive investigation); Upton, 856 F. Supp. at 750-51 (Turkish factors

satisfied and ordering witness list where no crime of violence charged, defendants have not been

arrested or convicted for crimes involving violence, evidence largely consisted of documentary

evidence, no threat to witnesses was present, the indictment alleged offenses over an extended

period of time, and all but one defendant had court-appointed counsel).

The Turkish factors weigh heavily in favor of directing the government to provide a

witness list in this case. With respect to the first, second and fourth factors, the defendants are

not charged with crimes of violence, and none of the defendants has ever been arrested or

convicted of a violent crime. Under the circumstances, there is no realistic possibility that

supplying the names of the witnesses prior to trial will increase the chances that these witnesses

will not appear or will be unwilling to testify at trial.

The third factor also weighs in favor of requiring a witness list: the volume of documents produced to date suggests that the evidence will consist largely of testimony related to those documents.

The fifth, and arguably most important, factor is the breadth of the allegations. Here, the 107-page Indictment alleges a wide variety of criminal conduct spanning approximately eight years, and suggests that the government might call a wide range of witnesses, including individual investors as well as employees of E&Y, multiple law firms and investment companies.

Finally, with respect to the issue of financial wherewithal to conduct investigation and trial preparation, while it is true that the defendants have retained counsel, none of the defendants can match the resources of the government in the conduct of its three-year investigation. As in all cases, the government enjoys the vast advantage of unlimited financial resources, pre-trial subpoena power through the use of the grand jury to compel witness attendance and testimony, and virtually unlimited investigative manpower, including in this case the participation of the IRS. There is no adequate way the Court can bring about a balance in this inherently unbalanced process, but production of a witness list will address the most glaring defense deficiency stemming from this tilted playing field.

In light of the Turkish factors, we respectfully request that the Court direct the government to produce a witness list no later than December 24, 2008 (i.e., approximately two months before trial).

22

## POINT V

### The Government Should Be Directed To
### Disclose Rule 404(b) Evidence No Later than February 1, 2009

In the March 24 Discovery Request, defendants also asked the government to disclose as

soon as possible all evidence that it plans to offer at trial pursuant to Rule 404(b) of the Federal

Rules of Evidence.  See Tigue Aff., Exhibit B, at 6.  The government responded by asserting that

it had "not identified any 404(b) evidence we intend to offer in evidence at trial, but will provide

you with notice of any such evidence if, and when, we do so."  See Tigue Aff., Exhibit D, at 3-4.

The purpose of Rule 404(b)'s notice provision is to "reduce surprise and promote early

resolution" of any challenge to the admissibility of the proffered evidence.  See Fed. R. Evid.

404(b), Advisory Committee Notes, 1991 Amendment.  Acceptable notice is such that "the

Defendant has time to object to the evidence and the Court has adequate time to decide such an

objection."  United States v. Livoti, 8 F. Supp. 2d 246, 250 (S.D.N.Y. 1998) (Scheindlin, J.).

With respect to the timing of the notice, the Court in Livoti held that "[w]hile notice is typically

provided no more than two to three weeks before trial, a longer notice period is appropriate

[where there is an] absence of any threat to the safety of prospective witnesses and [the] . . . Rule

404(b) evidence [is important to] the action."  Id.  In Livoti, the Court ordered the government to

provide the defense with its intent to offer 404(b) evidence and the contents of the evidence more

than one month prior to trial.  See id. at 250; see also McDonald, 2002 WL 2022215, at *3-4

(government ordered to provide defendants with Rule 404(b) evidence no later than four weeks

prior to trial to "facilitate pre-trial motions regarding admissibility of such evidence").

The early notice of the Rule 404(b) evidence, if any, will enable the defendants to make

motions with respect to the evidence and will permit the Court to rule on the motions prior to the

start of trial.  Moreover, in a complex white collar case such as this, notice is especially

23

necessary to enable defendants to prepare a defense to the alleged acts to be offered. As with defendants' request for a witness list, there is no reason to believe that any witness will be in danger if the Rule 404(b) evidence is identified in a timely manner.

Under the circumstances, defendants respectfully request that the Court direct the government to identify any evidence that it intends to offer pursuant to Rule 404(b) by February 1, 2009 (i.e., approximately one month before trial).

## CONCLUSION

For all of the foregoing reasons, this Court should grant the defendants' motions and direct the government (a) to provide a bill of particulars; (b) to identify documents that it intends to offer at trial by no later than December 24, 2008; (c) to make immediate production of Brady material, to produce all Giglio material no later than December 1, 2008, and to produce Jencks Act materials no later than December 24, 2008; (d) to provide a witness list by no later than December 24, 2008; and (e) to identify any evidence it intends to offer pursuant to Rule 404(b) of the Federal Rules of Evidence by no later than February 1, 2009.

Dated: May 5, 2008
    New York, New York

MORVILLO, ABRAMOWITZ, GRAND,
IASON, ANELLO & BOHRER, P.C.


By: /s/ John J. Tigue, Jr._____
    John J. Tigue, Jr.
    565 Fifth Avenue
    New York, NY 10017
    (212) 856-9600

24