# EXHIBIT D

627DBONC.txt

1

627dbonc
1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  ---------- ---------------- ---x
2
3  UNITED STATES OF AMERICA,              New York, N.Y.
3
4                  v.                      05 Cr. 390 (SHS)
4
5  JOSEPH BONGIORNO, et al.,
5
6                  Defendants.
6
7  ---------- ---------------- ---x
7
8                                          February 7, 2006
9                                          3:40 p.m.
9
10
10  Before:
11
11                  HON. SIDNEY H. STEIN,
12
12                                          District Judge
13
13
14                      APPEARANCES
14
15  MICHAEL J. GARCIA
15       United States Attorney for the
16       Southern District of New York
16  BY:  ANTHONY BARKOW
17       Assistant United States Attorney
17
18  KRAMER LEVIN NAFTALIS & FRANKEL, LLP
18       Attorneys for Defendant Joseph Bongiorno
19  BY:  BARRY H. BERKE
19
20  STILLMAN & FRIEDMAN
20       Attorneys for Defendant Patrick McGagh
21  BY:  MARJORIE PEERCE
21       KARIN ORENSTEIN
22
22  KRONISH LIEB WEINER & HELLMAN L.L.P.
23       Attorneys  for Defendant Michael Hayward
23  BY:  JONATHAN PAUL BACH
24
25
                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

2

627dbonc
1                  APPEARANCES CONTINUED
2  CLIFFORD CHANCE US, LLP
2       Attorneys for Defendant Michael Stern
3  BY:  DAVID MEISTER
3
4  SERCARZ & RIOPELLE, L.L.P.
4       Attorneys for Defendant Richard Volpe
5  BY:  MAURICE H. SERCARZ
                        Page 1

627DBONC.txt
```
5          ROLAND GUSTAF RIOPELLE
6
6     MAYER, BROWN, ROWE & MAW, LLP
7          Attorneys for Defendant Robert Scavone
7     BY:  ANDREW H. SCHAPIRO
8
9     ROPES & GRAY LLP
9          Attorneys for Defendant Gerard Hayes
10    BY:  JASON BROWN
11
12                                    oOo
13
14
15
16
17
18
19
20
21
22
23
24
25
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    3

627dbonc
```
1            (Defendants not present)
2            THE CLERK:  United States v. Joseph Bongiorno, et al.,
3     05 Cr. 390.
4            Counsel, please state your names for the record.
5            MR. BARKOW:  Good afternoon, your Honor.  Anthony
6     Barkow on behalf of the United States.
7            MR. BERKE:  Good afternoon, your Honor.  Barry Berke,
8     of Kramer and Levin, on behalf of Mr. Bongiorno.
9            MR. SCHAPIRO:  Andy Schapiro, from Mayer, Brown, for
10    Robert Scavone.
11           MR. BACH:  Jonathan Bach, from Kronish Lieb, for
12    Michael Hayward.
13           MR. MEISTER:  David Meister, Clifford Chance, for
14    Michael Stern.
15           MR. BROWN:  Jason Brown, from Ropes & Gray, for Gerard
16    Hayes.
17           MR. SERCARZ:  Maurice Sercarz and Roland Riopelle for
18    Richard Volpe.
19           MS. PEERCE:  Margie Peerce, from Stillman & Friedman,
20    for Patrick McGagh.
21           THE COURT:  Good afternoon to all of you.  Please be
22    seated.
23           I take it that all of you are waiving your clients'
24    appearances today and that your clients are aware of all of
25    that.  Is there anyone who -- rather than all of you saying
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    4

627dbonc
```
1     yes, yes, yes, yes, yes, is there anyone who disagrees with
2     that?
3            (Pause)
4            All right.
```
                                Page 2

627DBONC.txt

```
 5          I have reviewed the extensive papers filed on the two
 6   motions, that is, the Rule 16 motion for discovery filed by the
 7   defendants and the subsequent motion for a bill of particulars
 8   filed by defendants.  I also have been reading the materials
 9   that you have been sending me in the past few days in regard to
10   Judge Chin's thinking and Judge Baer and Judge Castel.  It is
11   always helpful to see what my colleagues are doing.  I am
12   prepared to rule on the outstanding motions.  Unless there is
13   anything that any of the parties wanted to tell me that's
14   happened in terms of your discussions with each other, anything
15   else that I should be aware of?
16          (Pause)
17          All right.  Defendants have moved pursuant to Rule 16
18   to compel the government to produce four different areas of
19   documents.  One is the display book screenshots for every
20   alleged violation from October 1, 2002 as well as for other
21   trades made by defendants.  The second group is SEC materials
22   concerning trading ahead and interpositioning.  The third are
23   the New York Stock Exchange documents concerning the definition
24   and identification of intentional trading ahead and
25   interpositioning; and the fourth is the number of alleged
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

5

```
     627dbonc
 1   trading ahead and interpositioning violations by specialists in
 2   similarly busy stocks.
 3          That's on the Rule 16 motion, and as I said, there is
 4   a separate motion for a bill of particulars.
 5          Let's do it one by one.
 6          The Stock Exchange has assembled at the government's
 7   request screenshots of what appeared on defendants' display
 8   books while they engaged in some of the trades at issue.  The
 9   government asserts that each set of screenshots shows exactly
10   what transpired on a specialist's display book during the
11   course of an allegedly improper trade, and the government has
12   turned over to the defense approximately 30 sets of screenshots
13   per defendant which everyone agrees are a small fraction of the
14   allegedly illegal activity that's charged here.
15          Pursuant to Rule 16, the defendants seek screenshots
16   for all of the remaining alleged violations charged in the
17   Indictment for which the Stock Exchange still has data.  They
18   seek the underlying data used to produce the screenshots, the
19   software used to generate the screenshots, and screenshots for
20   relevant trades material to the defense other than those
21   identified in the Indictment.
22          Rule 16, you all know, applies to items that are in
23   the possession, custody or control of the government.  The
24   screenshots themselves are not in the government's custody or
25   control but, rather, are in the Stock Exchange's.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

6

```
     627dbonc
 1   Specifically, as far as I understand it, the requested
 2   screenshots actually don't currently exist but the data that
 3   can be used to generate them does, as well as the proprietary
 4   software that's needed in order to generate them.  All of that
 5   is in the custody and control of the New York Stock Exchange.
 6          The question, then, is whether "the government" in
 7   Rule 16 can incorporate the New York Stock Exchange.  The
                            Page 3
```

627DBONC.txt

8   Second Circuit has not defined "the government" for purposes of
9   Rule 16. A leading case is United States v. Giffen, 379
10  F.Supp.2d 337, 343 (S.D.N.Y. 2004). The government asserts
11  that there has to be a joint investigation between the
12  government and the third party here, the New York Stock
13  Exchange, in order for Rule 16 obligations to apply to the
14  government. See United States v. Volpe, 42 F.Supp.2d 204 at
15  221, and United States v. Upton, 856 F.Supp. 727 at 749-50,
16  United States v. Guerrerio, 670 F.Supp. 1215 (S.D.N.Y. 1987).
17          The case law supports the defendants' position that
18  Rule 16 applies to more than just joint investigations, and
19  cases outside the Second Circuit also suggest that Rule 16
20  extends beyond joint investigations. See United States v.
21  Santiago, 46 F.3d 885, 894 (9th Cir. 1995), United States v.
22  Trevino, 556 F.2d 1265 at 1272 (5th Cir. 1977). The case law
23  supports the position that Rule 16 applies to more than joint
24  investigations.
25          Here we know there was no joint investigation between
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    7

627dbonc

1   the government and the New York Stock Exchange. No Stock
2   Exchange personnel participated in or attended any witness
3   interview conducted by the government. The Stock Exchange was
4   not involved in the government's charging decisions, and the
5   Stock Exchange and the FBI agents did not work together,
6   according to the information. I note that Judges Baer and Chin
7   relied on those facts in determining that there was no joint
8   investigation between the Stock Exchange and the prosecution.
9   See United States v. Foley and United States v. Delaney and
10  United States v. Finnerty and United States v. Murphy.
11          The question under these cases is whether the
12  government has access to the screenshots. Interpreting
13  "access" as defined in Webster's Third New International
14  Dictionary is "permission, liberty or ability to enter,
15  approach, communicate with or pass to and from." The
16  government doesn't have the permission, liberty or ability to
17  make use of the screenshot data without the compliance and
18  agreement of the New York Stock Exchange. If the government
19  absent a court order went to the Stock Exchange and asked that
20  it produce the numerous screenshots requested by the
21  defendants, the Stock Exchange certainly would be within its
22  rights to refuse to do so. In this way, the relationship
23  between the government and the Stock Exchange is similar to
24  that between the state and federal officials in United States
25  v. Chavez-Vernaza, 844 F.2d 1368 (9th Cir. 1987).
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    8

627dbonc

1           I therefore conclude that the government does not as a
2   legal matter have access to the screenshots. I therefore am
3   denying defendants' first discovery request because under the
4   applicable standard the screenshots do not fall within the
5   parameters of Rule 16.
6           Now, that leaves the Rule 17 analysis. I have no
7   subpoena before me, and I'm not going to rule on what would
8   have happened if there were any such subpoena. The standards
9   there would be different.
10          I can say that based on what I know so far, it strikes
                        Page 4

627DBONC.txt

```
11   me that the burden on the New York Stock Exchange in generating
12   these screenshots, if there were such a Rule 17 subpoena, would
13   be extremely high. Again, I repeat, I don't have a subpoena in
14   front of me, there is no motion to quash the subpoena, but I
15   wanted to give you a heads up on the Rule 17 issue as I see it
16   now.
17          In addition, the government has offered to provide
18   defendants with access to the software and data that can be
19   used to generate screenshots for any trade that occurred on any
20   of the dates for which the government has already produced
21   screenshots. As I understand that, each defendant would then
22   have the ability to generate sets of screenshots for every one
23   of the trades that they made on any of the days from which the
24   30 sets of screenshots per defendant that have already been
25   produced were generated. That seems to me to make an awful lot
```

                                                                    9

627dbonc

```
1    of sense as a way to cabin this dispute, and it seems to me
2    that the government's proposal to give the underlying data for
3    those -- for all of the trades on the day on which they've
4    already provided one of the 30 screenshots per defendant should
5    be produced, and that is adequate in terms of the required
6    screenshots.
7           The defendants then can try to test on that basis
8    whether the chosen screenshots are truly representative
9    samples. The defendants have the ability to come back to me if
10   they have reason to believe that they are not truly
11   representative, but at least that data will enable them to, I
12   think, give a sense of whether or not they are truly
13   representative.
14          Now, let's go to the second area, which is a request
15   by the defendants for all SEC materials concerning trading
16   ahead and interpositioning. This is because the SEC has
17   conducted its own investigation into trading ahead and
18   interpositioning by specialists at the New York Stock Exchange,
19   including the seven defendants.
20          Indeed, the SEC instituted administrative proceedings
21   against the defendants that closely track the allegations in
22   this Indictment. The defendants seek relevant Rule 16 and
23   Brady materials within the care, custody and control of the SEC
24   pertaining to trading ahead and interpositioning activity
25   during the relevant time period in the Indictment.
```

                                                                    10

627dbonc

```
1           As part of these materials, the defendants seek the
2    OCIE report -- that is, the SEC Office of Compliance
3    Inspections and Examinations -- report dated October 10, 2003,
4    which concern the New York Stock Exchange surveillance of
5    specialist trading firms during the relevant period as well as
6    other materials.
7           The government responds that the documents are not in
8    its custody, care or control and the documents are not material
9    to the defense. The government says the SEC conducted two
10   separate investigations -- sir?
11          MR. BARKOW: I'm sorry, your Honor. I don't mean to
12   interrupt, but with respect to the OCIE report, before the
13   Court went too far on this, the government is willing to
```
                              Page 5

627DBONC.txt

14    produce that particular item.
15         THE COURT: All right. I was about to say that the
16    SEC conducted two separate investigations. You have already
17    produced the first one.
18         MR. BARKOW: Well --
19         THE COURT: For one of the specialists.
20         MR. BARKOW: There are two separate investigations.
21    We have produced all SEC materials relating to the SEC
22    investigation of specialists, and it is our position that we
23    don't have the materials relating to the separate SEC
24    investigation regarding the Stock Exchange except for the OCIE
25    report --
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

11

627dbonc
1          THE COURT: All right.
2          MR. BARKOW: -- which we will produce.
3          THE COURT: Turn the OCIE report over.
4          What about the transcripts and the depositions that
5    are taken in connection with the report?
6          MR. BARKOW: That still is a live issue because we do
7    not believe that that is something that we should produce at
8    this point.
9          THE COURT: All right. What is your rationale for
10   turning over the report but not the depositions taken in
11   connection with it because it seems to me that the report,
12   which is going to test the propriety of the timing of the 60
13   seconds, 10 seconds, 15 seconds, that I do think it is
14   material, is going to be based on the underlying depositions,
15   how can you separate out one from the other? Or what is the
16   theory of separating out one from the other?
17         MR. BARKOW: Well, first, your Honor, the -- if I
18   could back up a little bit?
19         The report, as the Court knows, I think was ordered to
20   be produced by Judge Chin, and we are taking the position that
21   once we produce it there, we should also produce it here.
22         It is still our view that, although the Court
23   disagrees, that the materiality of that is subject to question.
24         However, with respect to the deposition transcripts,
25   that is not the sole basis for the OC report, that is 3500
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

12

627dbonc
1    material, and people -- if people whose deposition transcripts
2    were taken are going to testify, the government will produce
3    the 3500 material at the appropriate time according to the
4    Court's schedule or with the agreement of the parties in
5    advance of the testimony. But this is classic 3500 material,
6    the deposition transcripts.
7          The report synthesizes the results of the SEC's
8    investigation from whatever sources. It was the government's
9    view that it shouldn't be produced, but once it was ordered to
10   be produced, we're willing to give it to these defendants as
11   well, but they are distinct products from the deposition
12   transcripts which cover a whole host of subjects and really are
13   classic 3500 material.
14         THE COURT: I had thought that Judge Chin had ordered
15   the production not only of the report but -- well, his words
16   were, at least in the oral transcript I was given, along with
                          Page 6

627DBONC.txt
17   any Stock Exchange response to the report, any memoranda or
18   correspondence relating to it that are also in the possession,
19   custody or control of the government.
20           MR. BARKOW:  OK.  Now I understand the Court's
21   question.
22           There are two categories of information that these
23   defendants are seeking and one relates to the report and one
24   relates to transcripts.  Judge Chin ordered production of the
25   reports and if -- and this is the way the government read it,
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    13

627dbonc
1    and I can represent to the Court, our conversations with
2    defense counsel in the cases before Judge Chin, they did, as
3    well -- if there were additional materials that related -- for
4    example, correspondence about the report between the Stock
5    Exchange and the SEC, that type of thing would have to be
6    produced.
7            However, the government right now does not have
8    anything in its possession, custody or control regarding the OC
9    report other than the OC report itself, and so we are making
10   inquiries of the Stock Exchange whether there are additional
11   materials.  I don't know the answer to that right now.  But
12   that's a separate category.  The correspondence and report are
13   one category and the deposition transcripts are another, and
14   Judge Chin did not rule -- did not order us to produce the
15   transcripts.
16           THE COURT:  Are you saying you don't have the
17   deposition transcripts?
18           MR. BARKOW:  We do but it is a separate -- the way
19   that the issue was presented and argued before Judge Chin,
20   there are two separate issues.  One was the report and one was
21   the transcripts.  He ordered the production of the report and
22   additionally said that if there was correspondence --
23           THE COURT:  I understand.
24           MR. BARKOW:  We do have transcripts.  We do have
25   transcripts.  But that is not subject to Judge Chin's order and
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    14

627dbonc
1    we are not producing it.
2            THE COURT:  I understand now.
3            Tell me again what your rationale is for, if you are
4    producing one, not producing the other, and I think your
5    response has simply been classic 3500 material, and I don't
6    think that directly addresses the point, because that says at
7    some point we definitely are going to have to turn it over.  I
8    don't think it answers why it shouldn't be turned over now.
9            MR. BARKOW:  Because, your Honor, we've given notice
10   to the defendants and given them the names of witnesses who
11   they might wish to speak to, in an abundance of caution, to
12   identify those people who might say something that in our view
13   is material to their defense.  So we've identified for them by
14   name those individuals and sent letters to them listing those
15   individuals.
16           That without, over-generalizing, those individuals are
17   the source of the information that is material to the
18   defendants' defense.
19           The other individuals who testified in that
                                Page 7

627DBONC.txt

20  investigation, there were a lot of subjects discussed in their
21  testimony, and they are not sources of information, in our
22  view, having reviewed the transcripts and having read them, of
23  information that is remotely material to the defendants'
24  defense, and, therefore, all they really are are prior
25  statements of potential witnesses on subjects that may or may

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

15

627dbonc

1  not be the subject, if they testify, of their testimony at
2  trial.
3       And because it doesn't have -- because these
4  transcripts don't have information that's material to their
5  defense in the same sense that the OC report does, we view that
6  as just a different category of information just like a grand
7  jury transcript would be --
8       THE COURT:  I understand.
9       Does anybody on the defense side want to respond on
10  the issue of the transcripts?  Because I have directed the OCIE
11  report to be turned over, and, in any event, the government is
12  going to do it based on Judge Chin's ruling and his
13  determination that it should apply here as well.
14       Sir, Mr. Bach.
15       MR. BACH:  Yes, your Honor.
16       I understood Mr. Barkow to be saying in the first
17  instance that the government planned to produce these
18  transcripts under Rule 3500.
19       THE COURT:  To the extent they were 3500 material,
20  correct.
21       MR. BACH:  So that leaves open the possibility that
22  there are transcripts that discuss the surveillance parameters
23  that would not be disclosed to the defense pursuant to Rule
24  3500.  We think we are entitled to those now.
25       Rule 16 applies.  Rule 16 is broader than Brady in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

16

627dbonc

1  this district.  Barkow has given us Brady notice.  In our view,
2  that only serves to underscore the importance and materiality
3  of these materials.  This is a simple call because the
4  government has these documents in its possession, and there is
5  no question about access, there is no question about joint
6  investigation.  They have them.  They are easy to produce, and
7  we think we are entitled to them.
8       THE COURT:  All right.  Sir, did you want to respond?
9       MR. BARKOW:  Your Honor, the simple fact that there is
10  a lot of testimony here, there are a lot of individuals, and
11  the simple fact that the trading ahead or interpositioning
12  might have been mentioned in a transcript does not convert
13  transcript that is classic 3500 material, a detailed prior
14  statement by a potential witness if they testify, into Rule 16
15  material.  Rule 16 contemplates this.  Rule 26.2 contemplates
16  this and says that Rule 16 is not an appropriate vehicle for
17  the production of 3500 material.
18       The OC report is a different animal, and these are
19  prior statements, some of them, of potential witnesses.  The
20  government reviewed these statements, and if there was anything
21  in it that we thought that, in an abundance of caution, should
22  be disclosable, we brought the witness's identity to the

Page 8

627DBONC.txt
23  attention of the defendants, and we did do that for several
24  people. But this is, in our view --
25              MR. RIOPELLE: Judge --
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                17
    627dbonc
 1              THE COURT: Let him finish.
 2              MR. BARKOW: In our view, your Honor, this is an
 3  essentially an early request for 3500 material.
 4              THE COURT: Thank you.
 5              MR. RIOPELLE: Roland Riopelle.
 6              They are only required to produce material for
 7  witnesses they call. Are they representing now on the record
 8  that they are going to call every person who was associated in
 9  some way with the preparation of this report? If not, what
10  will happen is they have given us the names of witnesses who
11  they believe have information that is material to our defense
12  who have now refused to speak to us. They will not produce the
13  material that they have in their hands that will tell us
14  whether we should call those witnesses. They will not call
15  those witnesses. They will therefore not produce that
16  material, because it is not 3500 material, because they didn't
17  call the witness, and we will never have access to it.
18              Your Honor, you know, the Assistant U.S. Attorney,
19  most respectfully, has stood up and told us that he has decided
20  that some of this stuff is just not material to the defense. I
21  am not sure he's tried a lot of defense cases. I hadn't when I
22  was an Assistant U.S. Attorney, and I don't think it is fair to
23  let him make that judgment for us.
24              We ought to get this material. We ought to be able to
25  review it and decide who we are going to call. Giving us
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                18
    627dbonc
 1  somebody's name whose lawyer tells us goodbye and hangs up the
 2  phone on us is no substitute.
 3              THE COURT: Yes, but you are only entitled to what
 4  Rule 16 entitles you to. You are not entitled to everything
 5  that exists in the government's files.
 6              MR. RIOPELLE: Let me also add, your Honor, that with
 7  respect to this report, we may want to cross-examine a witness
 8  or two about it, and knowing what was said about it by all the
 9  people in the room when it was prepared is going to be material
10  to that cross-examination, and that is squarely within Rule 16.
11              THE COURT: Go ahead.
12              MS. PEERCE: Your Honor, if I might just add? If your
13  Honor has concluded that the report is material, I am a little
14  bit confused as to how the government's position can be that
15  the material that went into creating the report is not
16  material.
17              THE COURT: That's why I was addressing my question to
18  Mr. Barkow, and I think what he is saying is that the
19  depositions may have touched simply briefly on this issue and,
20  in fact, may contain a lot of material, a lot of information
21  that is not part of the report.
22              Is that essentially correct?
23              MR. BARKOW: That is essentially correct, Judge.
24              MS. PEERCE: Then, your Honor, if there are parts in
25  there that deal with the issues that are material to this case,
                            Page 9

19

627dbonc

1 are we not entitled to it now?
2         MR. BARKOW: Your Honor, to draw an analogy, if we
3 have a grand jury transcript of a witness who we don't call who
4 talks about the subject matter of a defense, if what they say
5 is not exculpatory, not material and doesn't get into detail in
6 any way that is material to the preparation of the defense, it
7 is not something that needs to be produced.
8         THE COURT: It is a traditional issue that the defense
9 is arguing: why should the adversary be deciding what is
10 material?
11         MR. BARKOW: Well, your Honor, I think with respect to
12 transcripts in particular, and it is not just tradition and the
13 practice of the courts in this district, it is the law because
14 it is a prior statement by a potential witness, and the law is
15 that that transcript doesn't need to be turned over, the prior
16 statement, until after the direct testimony.
17         We are not taking the position that we will wait until
18 then, but that is a classic kind of impeachment --
19         THE COURT: Mr. Riopelle is conceding that, but he is
20 raising the issue of people who you may not call --
21         MR. BARKOW: That is correct, your Honor.
22         THE COURT: -- who have given material information.
23 That is his point.
24         MR. RIOPELLE: That is exactly correct.
25         MR. BARKOW: That is correct, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

627dbonc

1         And we have reviewed those transcripts, and I can
2 represent to the Court, in our view, and I understand that, you
3 know, this is just inherent to the situation, but in our view,
4 we erred on the side of disclosure and we, in an abundance of
5 caution, identified witnesses that the defendants might wish to
6 speak to. That is a separate issue, then.
7         THE COURT: I understand.
8         Mr. Shapiro, go ahead. Last round.
9         MR. SCHAPIRO: Just one final note, your Honor, and
10 that is I think that the circumstance that Mr. Barkow is
11 referring to when he talks about classic 3500, analogizing it
12 to grand jury transcript, is quite different from what we have
13 here today, because what we have today is transcripts that form
14 the basis of a report that has already been determined to be
15 material and that is being turned over to the defense. So we
16 are not asking for grand jury transcripts. Grand jury is a
17 very different situation governed by very different rules. We
18 are not seeking those.
19         These transcripts, the only thing they have in common
20 with grand jury transcripts is that they are transcripts.
21 Other than that, they are quite distinguishable.
22         THE COURT: All right. I am going to --
23         MR. BARKOW: Your Honor, if I may make two more
24 points?
25         THE COURT: Yes.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Page 10

627DBONC.txt

21

627dbonc

1      MR. BARKOW: One is the fact that the grand jury
2  status is irrelevant, it could have been deposition transcript.
3  But moreover, I submit to the Court, if the Court is inclined
4  at this point to order disclosure of these, I would ask the
5  Court to allow us to review them again, to submit something to
6  the Court perhaps ex parte detailing what these witnesses said
7  about these subjects, so that the Court can make a fully
8  informed decision on this. Because in our view what we would
9  be doing is giving to the defendants transcripts that we view
10  as classic 3500 far in advance of trial, and we would ask the
11  Court --
12      THE COURT: I understand. I actually was about to
13  rule that they didn't have to be turned over, but I will take
14  that government offer. All right? So why don't you make that
15  submission to me and I will take a look at it. I guess you
16  would want to do it ex parte.
17      MR. BARKOW: Yes, your Honor.
18      THE COURT: You certainly can. But what I was going
19  to say is, on the representation that had been made about the
20  fact that it is either 3500 material or it is not material, I
21  was going to accept that representation. But I certainly will
22  accept the additional information that the government so kindly
23  offered.
24      MR. RIOPELLE: Can Mr. Barkow, your Honor, please
25  state on the record whether he is actually going to call all of
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

22

627dbonc

1  the people who are identified in the letters --
2      THE COURT: No, I am not going to ask the government
3  to make that determination now. Let's move on.
4      The third area of documents requested is the New York
5  Stock Exchange documents regarding the surveillance and
6  monitoring practices.
7      MR. BACH: Judge, before we move on, if I could
8  briefly address the existence of related correspondence and
9  memoranda?
10      THE COURT: Go ahead.
11      MR. BACH: I think Mr. Barkow described two categories
12  about that.
13      Within the possession of the SEC, we believe there is
14  a wealth of correspondence and materials relating to some of
15  the subjects addressed in the OCIE report that the government
16  has acknowledged to be material. The OCIE report, we believe,
17  was the culmination of a long back-and-forth between the SEC
18  and the New York Stock Exchange. The inspection grew out of a
19  series of discussions and the issues that had been addressed
20  over a period of months and years, and we believe that there
21  are documents in the government's possession and in the SEC's
22  possession that talk about the surveillance parameters, whether
23  they can be meaningfully produced without generating false
24  positives, whether they can be --
25      THE COURT: Apparently the defense, which may not
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

23

627dbonc

1  involve you ladies and gentlemen, and the government have
                    Page 11

627DBONC.txt

2   reached an understanding as to what the Chin order referred to
3   in terms of the report and any memoranda or correspondence
4   relating to it in the possession of the government; is that not
5   so?
6           MR. BACH: We haven't discussed it. We haven't
7   reached --
8           MR. BARKOW: I meant in the case before Judge Chin,
9   your Honor.
10          THE COURT: All right. What is that understanding,
11   again, in regard to the phrasing of memoranda or
12   correspondence? I was, in my own mind, I had taken a very
13   relatively narrow view of that, that is, things that would say
14   here's the report. But go ahead.
15          MR. BARKOW: That is essentially the understanding
16   that we have and I think the defense lawyers in the case before
17   Judge Chin have. I think that Mr. Bach had a conversation with
18   my co-counsel about this subject that I wasn't a party to, but
19   I don't think we reached any agreements or understandings in
20   interpreting that.
21          THE COURT: It seems to me that transmittal memos or
22   something like that, I am not going to have them produce all of
23   the backup information that related to the report. It is the
24   report that is the central thing here.
25          Let's move on to the third area, and that is the Stock
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                                    24

627dbonc
1   Exchange documents regarding surveillance and monitoring
2   practices, that is, the determination to use the timing of
3   10/15 seconds rather than the 60 seconds.
4           Does the government have possession of those documents
5   and have you reviewed them?
6           MR. BARKOW: No, your Honor. We have never seen them.
7           THE COURT: I wouldn't think so. That was the
8   representation that was made in the other case.
9           I am going to hold this -- it is the same analysis as
10   the screenshots themselves. No joint investigation. The
11   government hasn't reviewed them. The government doesn't have
12   access to them, doesn't possess them. So I'm going to deny the
13   Rule 16 application. The same as the Rule 17 subpoenas, but,
14   again, that is not in front of us.
15          Sir.
16          MR. MEISTER: Your Honor, David Meister.
17   May I just be heard briefly on that?
18          THE COURT: Yes, sure.
19          MR. MEISTER: As I heard your Honor's ruling with
20   respect to the first category of documents, the screenshots,
21   your Honor's decision was based on the notion that the
22   government doesn't have access to the Stock Exchange's
23   materials, and I think what your Honor said was --
24          THE COURT: And it wasn't a joint investigation. I
25   wasn't limiting it to Rule 16, to joint investigations in terms
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                                    25

627dbonc
1   of the government -- definition of "the government" but I went
2   beyond. Go ahead.
3           MR. MEISTER: As I understood, your Honor said that if
4   the government had access to the information, that maybe you
                           Page 12

627DBONC.txt
```
 5   would have come out differently, but your Honor concluded that
 6   the government did not have access because they didn't have
 7   sort of permission to --
 8            THE COURT:  Well, the SEC or the Stock Exchange, the
 9   third entity could say no, we don't want to give them to you.
10            MR. MEISTER:  Your Honor, just on that point, I just
11   want to bring one thing to your attention that maybe we haven't
12   brought to your attention in all of our briefing, and that is
13   that there is a Consent Order as between the SEC and the New
14   York Stock Exchange that requires the New York Stock Exchange
15   to provide any material that the SEC asks.  They don't have a
16   right to object.
17            And we can bring that Consent Order to your Honor's
18   attention.  I actually just read it myself this past week, and
19   so it is our fault if we haven't brought the material to your
20   attention to date.  But it is not like the government or
21   particularly the SEC, the SEC would have to go to a Court to
22   seek permission to gain access to this material.  The SEC has
23   an open right to that material.
24            THE COURT:  All right.  The government in response
25   could say, hey, the government does have access here because of
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

                                                                26

627dbonc
```
 1   this Consent Order of some kind.
 2            MR. BARKOW:  Your Honor, I don't have the Consent
 3   Order in front of me.  I will make a few points about it,
 4   though.
 5            First, that same Consent Order was brought to the
 6   attention of Judge Baer, and just so the Court is aware, and it
 7   did not persuade him and that litigation shifted to the Rule 17
 8   context.
 9            Secondly, the access given --
10            THE COURT:  To the extent the issue is whether or not
11   the government has access regardless of Judge Baer's analysis,
12   it seems to me that it may be relevant.  So address that.
13            MR. BARKOW:  Secondly, the -- again, I don't have it
14   in front of me, but the Consent Decree gives access to the SEC,
15   not to the U.S. Attorney's Office, and as part of this civil
16   settlement.
17            And thirdly --
18            THE COURT:  If that is so, that seems to me
19   dispositive on this issue.
20            Go ahead.
21            MR. BARKOW:  Well, and, thirdly, these documents
22   relate to the investigation of the Stock Exchange, and that, as
23   is set forth in the papers, is a wholly separate part of the
24   SEC investigation than the investigation of the specialists.
25   And so the wall that I think the Court recognized earlier in
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

                                                                27

627dbonc
```
 1   its decision between the two separate investigations, the SEC
 2   investigation of the specialists and the SEC investigation of
 3   the Stock Exchange, we have no contact at all.  I can't even
 4   identify a name for the Court who the SEC people are who work
 5   on the investigation of the Stock Exchange.  And so that's
 6   just -- it is not something that the U.S. Attorney's Office has
 7   access to because the SEC can make requests in connection with
```
Page 13

627DBONC.txt

8  its Stock Exchange investigation.
9          THE COURT:  All right.  I am adhering to the ruling
10  that the defense can present the terms of that to me later on
11  if they want and see if it changes anything.
12          MR. MEISTER:  Thank you, your Honor.
13          MR. BARKOW:  I think the Court is getting to the next
14  issue, which is data for nonindicted stocks.
15          THE COURT:  Yes.
16          MR. BARKOW:  And before the Court gets there, I want
17  to tell the Court that this has been -- I can't keep it
18  straight right now, but in another case this has been ordered
19  to be produced in the form that it currently exists, and we are
20  willing to do that here as well, so long as that production is
21  not viewed or taken as a concession on admissibility, because
22  we do not believe -- we don't believe that it was necessarily
23  appropriately produced, but we don't believe it is admissible,
24  and so long as we can litigate that issue down the road.
25          THE COURT:  Turning things over now does not concede
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                              28

627dbonc
1  admissibility.  So given the fact that the government has
2  agreed, and I think the papers indicate that the government has
3  agreed, I don't have to rule on it.  So those reports will be
4  turned over.
5          MR. BERKE:  Judge, to the extent it is helpful and
6  your Honor would like us to address it, I think it is fairly
7  straightforward, the Consent Decree is an exhibit to our motion
8  papers and I can pass up a copy to your Honor.
9          THE COURT:  Yes.
10          MR. MEISTER:  It looks like it is Exhibit 11.
11          MR. BERKE:  Exhibit 11 on our motion papers.
12          THE COURT:  I have it.
13          What section do you want to address me to?
14          MR. BERKE:  Judge, if I can, it is toward the end of
15  the document.  It is the end of Section C, Paragraph 30.  Then
16  it lays out -- it is Paragraph 30.  And it lays out all the
17  things the Stock Exchange has agreed to do pursuant to this
18  agreement.
19          And if I could note, Judge, on 30A, one of it is "to
20  produce any and all documents and information requested by the
21  Commission's staff without subpoena."
22          And in the preceding paragraph, it refers to --
23          THE COURT:  Wait just a moment.
24          MR. BERKE:  I'm sorry, Judge.
25          (Pause)
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                              29

627dbonc
1          THE COURT:  Yes.  Go ahead.
2          MR. BERKE:  And, Judge, if I can --
3          THE COURT:  That seems to me that that doesn't address
4  the issue.  What that says is the Stock Exchange will produce,
5  without service of a subpoena, any documents that the SEC
6  wants.  Isn't that what that says?
7          MR. BERKE:  Yes.
8          THE COURT:  How does that address the issue before us
9  here with regard to the Southern District of New York?
10          MR. BERKE:  Judge, if I can, I think there are three
                         Page 14

627DBONC.txt
```
11   steps here.  As I understand, and we've outlined in our papers
12   probably ad nauseam that there is this question that very much
13   is going to be a subject at trial, what is appropriate time
14   parameters in order to draw assumptions as to whether conduct
15   was intentional.
16        The Stock Exchange had the time parameter that had
17   been used prior to any investigation.  Thereafter, there is the
18   SEC investigation of the New York Stock Exchange resulting in a
19   variety of different things, including the OCI report that we
20   have.
21        The OCI report, as we understand it, describes that
22   the SEC determined that the appropriate time parameter was not
23   the parameter historically used by the Exchange but rather the
24   10 seconds and 15 seconds we've described, and they've done
25   that based on all sorts of information that we don't have and I
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300
```

                                                                30
627dbonc
```
1    don't believe that we're going to have in response to the OCI
2    report.  That will just have, I believe, the conclusion and a
3    description of how that conclusion was reached.
4         So what we're saying is the government -- the U.S.
5    Attorney's Office now simply adopted what the SEC determined
6    based on steps it took in connection with the New York Stock
7    Exchange.
8         THE COURT:  In terms of the time?
9         MR. BERKE:  In terms of the time.
10        We are then left eventually saying we are going to
11   have to cross-examine witnesses, we are going to argue at trial
12   all about this 10 seconds, and we are not going to have any
13   understanding or basis as to how they reached it.  We believe
14   there are documents that exist that will outline in great
15   detail why the government believes this 10 seconds is
16   appropriate and how the 10 seconds was reached in order to
17   identify --
18        THE COURT:  Not in the possession of the Southern
19   District and the Southern District doesn't have access.  This
20   doesn't give the Southern District access, does it?
21        MR. BERKE:  Judge, now what we are talking about is
22   your Honor originally addressed whether or not the U.S.
23   Attorney's Office has access to the quasi-public New York Stock
24   Exchange.  This is a step different.  The SEC clearly has
25   access to what is in the possession of the New York Stock
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300
```

                                                                31
627dbonc
```
1    Exchange on this issue we believe pursuant to the Consent
2    Decree, and we would submit that the --
3         THE COURT:  Say that again.  I want to make sure that
4    I am following it.  That the SEC has access to the Stock
5    Exchange on the basis of this document?
6         MR. BERKE:  Exactly.
7         THE COURT:  Right.  Go ahead.  I am with you.
8         MR. BERKE:  We believe that the U.S. Attorney's Office
9    has access to the documents in the possession of the SEC
10   related to these issues.  And I can go in greater detail why
11   that is the case.  I think is a very different analysis whether
12   the U.S. Attorney's Office for the Southern District has access
13   to documents in the possession of the SEC than whether they
                     Page 15
```

627DBONC.txt
14    have access to documents in the possession of the New York
15    Stock Exchange.
16            THE COURT:  So you're in effect conceding the lack of
17    access to the Stock Exchange but saying you can get there the
18    same way by going through the SEC because the SEC, by virtue of
19    this Consent Decree, can get them easily from the Stock
20    Exchange.
21            MR. BERKE:  With all respect, your Honor, I'm
22    conceding your Honor's ruling on the issue of access to the
23    Stock Exchange, but I am saying it is a much stronger position
24    as to the SEC.
25            THE COURT:  I understand.  Go ahead.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                        32
      627dbonc
 1            I don't think you get there, but if the government
 2    wants to concede this point, I will take it.
 3            MR. BARKOW:  I don't, your Honor, so maybe I should
 4    sit down on this one.
 5            THE COURT:  Say it, but make your record.
 6            MR. BARKOW:  The only thing I was going to stay in
 7    addition to what I had said before is the caption here I think
 8    illustrates my point.  This is the investigation by the SEC of
 9    the Stock Exchange, not the specialists.
10            THE COURT:  I don't think the defense gets there but I
11    appreciate your argument, and I now better understand the use
12    that you are trying to make of this Consent Decree.  You just
13    don't get there.
14            Let's turn to the bill of particulars.
15            Mr. Barkow, you have talked about trying to be
16    consistent here between the cases, and because I clearly didn't
17    have enough to read, Mr. Berke was kind enough to give me more
18    today with this letter with the transcript from Judge Chin.
19            I take it, you are prepared to adopt your description
20    of the allegations of what conduct is at issue as set forth
21    there on page 9 and 10?
22            MR. BARKOW:  You are referring, your Honor, to the
23    Judge Chin transcript?
24            THE COURT:  Yes.
25            MR. BARKOW:  Yes.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                        33
      627dbonc
 1            THE COURT:  It is -- just so we are literally on the
 2    same page, it is the attachment to Mr. Berke's
 3    February 6th letter, and on the right-hand margin it looks like
 4    the pagination is page 9 of 10.  It is your statement there
 5    beginning on line 18, page 9, to line 10, page 10.
 6            MR. BARKOW:  I am turning to that, your Honor, and I
 7    haven't gotten there yet, but what I said yesterday before
 8    Judge Chin I am ready to adhere to here.
 9            THE COURT:  Take a look at it.
10            MR. BARKOW:  OK.
11            (Pause)
12            MS. GOLDBERG:  I stand behind that statement, your
13    Honor.
14            THE COURT:  All right.  All the parties here know that
15    a bill of particulars is a discretionary matter for the Court,
16    and the purpose is to provide sufficient information about the
                                Page 16

627DBONC.txt
```
17    charge to enable a defendant to avoid unfair surprise or to
18    preclude a second prosecution for the same offense.  It is not
19    for discovery purposes.  It is not to force additional
20    discovery.  And everyone here knows the cases, United States v.
21    Torres, United States v. Bortnovsky.  The defendants contend
22    the Indictment is insufficient because it doesn't specify the
23    conduct that was illegal.  They argue that it simply tracks the
24    language of the statutes.
25              I do think that both in the Indictment and, as using
```

627dbonc
```
1     Mr. Barkow's statement before Judge Chin, the conduct that is
2     alleged is quite clear, and I don't think the defense is
3     entitled to further specificity here.
4               MR. MEISTER:  Your Honor, may I be heard on that?
5               THE COURT:  The codefendants are a separate issue that
6     the defendants wanted and began under Nachamie, United States
7     v. Nachamie.  I really don't think you are entitled to it.  The
8     issue is whether or not the co-conspirators' identity is
9     necessary, not whether it would be helpful.  And based on what
10    the government says in its papers here, the unindicted
11    co-conspirators are people that the defendants had been aware
12    of, that they worked with as part of the alleged conspiracy.
13    So I am not at this point going to require further
14    specification or, specifically, names of unindicted
15    co-conspirators.
16              Yes, sir, somebody wanted to say something?
17              MR. MEISTER:  Yes, your Honor, just with respect to
18    the nature of the crime.
19              I understand that your Honor -- or that Mr. Barkow is
20    now relying on the statements he made to Judge Chin, I think it
21    was just yesterday --
22              THE COURT:  Yes.  I don't think there is anything
23    surprising about that and it just gives you further
24    specification.
25              Go ahead.
```

627dbonc
```
1               MR. MEISTER:  It was, frankly, your Honor, it was
2     surprising to us.  It was the first time that we had heard the
3     government say that, in part, its case was based on implied
4     misrepresentations, or what the government has said -- the
5     government did not say that in the brief to your Honor.  What
6     the government said in the brief to your Honor was that its
7     case was -- that there are no affirmative misrepresentations
8     made, that they were going to -- that the fraud was based on
9     omissions of material facts.
10              THE COURT:  "By trading ahead or interpositioning,
11    their failure to say that they were going to do these things
12    constitute omissions.  So there are no particular false
13    statements that can be identified, but the failure to inform
14    the public that they were going to do these things constitute
15    omissions, and that is what we have told defense counsel."
16              MR. MEISTER:  Not implied misrepresentations.  Your
17    Honor, I believe --
18              THE COURT:  What is your question?
19              MR. MEISTER:  Your Honor, I guess my request, your
```
                              Page 17

627DBONC.txt
20    Honor, is that --
21            THE COURT:  I mean, go back earlier in the statement:
22    "In the context of a bill of particulars, there were no
23    particular false statements that we could identify because the
24    false statements theory here is that the defendants made
25    implied representations that they would not cheat customers,
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    36
      627dbonc
1     steal from customers wishing to trade on the Stock Exchange,"
2     etc.  I think the government is adhering to that.  In other
3     words, they implied that they weren't going to cheat, that they
4     weren't requesting to interposition or trade in front, and that
5     is the false statement; is that right, government?
6            MR. BARKOW:  Yes, your Honor.
7            THE COURT:  All right.  It is straightforward.  It
8     seems to me it is straightforward.
9            MR. MEISTER:  I guess, your Honor, what we would
10    request is if the government could provide a bill that just
11    states that?  Your Honor, we have been following what the
12    government has been saying from case to case and including in
13    this case, and just from our point of view, the government
14    changes or adds from time to time.
15            THE COURT:  Well, you have this statement.  You have
16    the government sit before Judge Chin.  You have the government
17    now saying that's their theory of the case.  I'm not going to
18    require them to say it again.
19            All right.
20            MR. MEISTER:  Yes, your Honor, just on the second
21    point, if I can just be brief?
22            THE COURT:  Go ahead.
23            MR. MEISTER:  On the second point, I understand your
24    Honor has said that, we'll, based on the government's
25    representations, the seven defendants here should know the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    37
      627dbonc
1     other co-conspirators because these were people who they worked
2     with -- with whom they worked for some period of time.
3            I would just stress to your Honor there were hundreds
4     of people who worked at VDM.  And this is not your typical
5     conspiracy case, Judge, where, for example, there is some sort
6     of drug activity where everyone in the drug activity should
7     know or should know of others who were participating in the
8     same activity.  We are talking about a large company, all of
9     whom were working in the same type of environment essentially
10    doing the same sort of trading, whether or not the government
11    says it was illegal or not.  We are honestly in the dark as to
12    where the government draws the line.
13            THE COURT:  All right.  Mr. Barkow, why don't you
14    respond to that, because what Mr. Meister has just said is that
15    he is analogizing it to United States v. Strawberry, which was
16    Judge Parker's decision where he directed that the names of
17    co-conspirators be turned over because the defendant hadn't
18    been present at the incriminating events.  I think what the
19    defense is just arguing is this is similar because when you've
20    got a company with hundreds of people participating, the
21    defendants are at sea.
22            Is that fair enough?
                            Page 18

627DBONC.txt
23          MR. MEISTER:  That is very well stated, your Honor,
24  yes.
25          MR. BARKOW:  Your Honor, first, the drug analogy is
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    38

627dbonc
1   helpful to the government, because as opposed to a case
2   involving narcotics distribution where you might have people
3   who are in a wide network who don't know each other, who use
4   nicknames, who don't have all that contact except for a few
5   people at the top, here we have specialists who sat sometimes
6   for years this close, right next to them, to their clerks, to
7   their secondary clerks, to their backup clerks, who were
8   supervised by their supervisors.  So they have intimate
9   knowledge of the people who were around them.
10          I recognize the company is a big company, but there
11  may be unknown people, unknown to the defendants, who are also
12  unknown co-conspirators.  The government alleged
13  co-conspirators known and unknown.  I submit here that what is
14  really at play here is that the defendants are attempting to
15  get a witness list, because if we identify co-conspirators,
16  there would be one particular type of co-conspirator who we
17  identified that would be clerks.  Those are the types of people
18  who they worked with for years, who they know very well, and
19  who sat right next to them for many months day after day after
20  day.  And it is just not the same as a drug conspiracy or even
21  the conspiracy in Strawberry, where it might have pervaded some
22  large entity.  The conspirators know these defendants know.
23  And so in the government's view this is a request for a witness
24  list of people who they already know.
25          THE COURT:  All right.  I am not going to change my
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    39

627dbonc
1   decision.
2           Is there anything else we need do today?
3           MR. BARKOW:  I have two things, your Honor.
4           One just relates back to the Court's ruling, and I
5   just want to get clarification of something for myself and for
6   the Stock Exchange.
7           With respect to the screenshots, the government's
8   proposal was to give the defendants access -- of actually
9   really the Stock Exchange to give the defendants access to the
10  SIAC facility for the screenshots.
11          THE COURT:  On each of the days --
12          MR. BARKOW:  That is not my question.  My question is
13  just the physical location.  Our proposal was to give them
14  access and that they need to go to the facility.  I think at
15  some point the Court might have used the word "produced," that
16  the government should produce the data, and I just want to be
17  clear that the Court wasn't ordering us to get it and give it
18  to them but instead the SIAC --
19          THE COURT:  No.  Given what I understand are the
20  mechanics and time involved, no, I am not asking the government
21  to do that.
22          MR. BARKOW:  That was one question.
23          And the other one I guess is something that will
24  probably inevitably come up, but the government would like to
25  inquire, through the Court of the defendants and to the Court
                        Page 19

627DBONC.txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

40

627dbonc
1   itself: We have a trial date of May 1st. We will be ready to
2   go on that date, we are preparing for trial now. But what we
3   would like to avoid -- this is a large case, there is a lot of
4   preparation here -- we don't know whether the defendants truly
5   intend to go, and we would like to know now whether that is a
6   date that we're committed to to go to trial or -- and if it is
7   not, we would like to change it now, and if it is, we would
8   like to keep it and stick with it.
9          THE COURT: I understand.
10         Defendants, are you ready to go on May 1, because the
11  Court is ready to go on May 1?
12         MR. BERKE: Judge, if I can address some issues?
13         Let me say that the defendants requested a trial in
14  May because we would like to try the case in May. I think
15  there are a couple of issues that we wanted to raise with your
16  Honor that certainly impact on whether a trial is in May,
17  whether we may need a few extra weeks, if your Honor's schedule
18  permitted it, and we are inclined to entertain that.
19         One of the things that concerns us about the
20  government's offer regarding SIAC is we understand that in
21  order to access this data, the government has put a tremendous
22  amount of restrictions on what our experts will be permitted to
23  do in accessing this data. We certainly appreciate the
24  confidentiality, proprietary issues and are prepared,
25  obviously, to enter into a very stringent confidentiality
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

41

627dbonc
1   order, as we have done relating to other documents.
2          But what the government has said were the conditions
3   for accessing the material essentially would preclude our
4   experts from removing any of the materials that they review
5   during their visit to SIAC, from bringing any computers in
6   which, again, deal with computer data. That is essentially
7   what experts use in order to be able to look and work and try
8   to make sense of this data.
9          They would -- the expert is prohibited under what they
10  offer, would be prohibited from reproducing, recording, reverse
11  engineering, making derivative works or compiling or
12  decompiling any computer code or program related to the display
13  book materials.
14         One of the key purposes for accessing the material --
15  I'm sorry, for accessing the material would be to do just that,
16  to be able to in fact test what the government has done on
17  display books screenshots to see if in fact that is accurate,
18  reliable, etc., and to do other things that we have identified
19  in our papers. So that the conditions that have been attached
20  would not only extraordinarily delay the process of making use
21  of the material but would also essentially render it largely,
22  we believe, you know, if not ineffective, not particularly
23  effective.
24         THE COURT: Have you talked to each other about this?
25         MR. BERKE: Well, we had a discussion with --
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

627DBONC.txt

42

627dbonc

1      THE COURT:  Because I can start going into it.  I
2   mean, I would have to be educated on the computer aspect of it.
3      In general, it seems to me that the experts have to be
4   allowed to manipulate the data they see.  That's what experts
5   do.  And presumably the Stock Exchange wouldn't want that
6   manipulation to occur in their computers.
7      So I would think the experts would have to be able to
8   manipulate the data on their own computers.  But, you know, I
9   don't think I could take it to much greater depth or
10  sophistication.  That is just my general sense.  I think the
11  parties ought to talk about the issue before presenting it to
12  me.  So I am just asking whether or not you have talked to each
13  other.
14      MR. BERKE:  Here is what I would suggest, Judge.  I
15  had a conversation with Ms. Goldberg, Mr. Barkow's colleague on
16  this case, very early on when this offer was made, and it was
17  clear in our discussion that we were not going to reach
18  agreement about what they are offering.  The issue has
19  essentially been in abeyance while we have been litigating
20  these issues.  I think it does make sense and we are happy to
21  have those conversations forthwith.
22      Based on subsequent conversation I did have with
23  Ms. Goldberg, I believe we probably are going to end up
24  agreeing to disagree about some fairly core issues, but I agree
25  it makes sense, before we present the substance of the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

43

627dbonc
1   disagreement, to discuss further, in light of your Honor's
2   ruling and --
3      THE COURT:  what you want to be able to do, or what I
4   want the parties to be able to do, is for the experts to be
5   able to have access to the data to be able to manipulate it in
6   any way they want without interfering with the New York stock
7   Exchange's proprietary system or database and for it all to be
8   held within the parameters of this case and not used for any
9   other purpose.  It seems to me that's where we all want to end
10  up.
11      Sir.
12      MR. BARKOW:  Yes, your Honor.
13      Your Honor, the agreement to which Mr. Berke is
14  referring is very detailed.  It has been entered into in
15  virtually all of the cases that are pending that are related;
16  in fact, perhaps all.  We are walled off, actually, from the
17  agreement so I don't know exactly what the status is.  But it
18  is very detailed, and it is designed to protect the proprietary
19  nature of the Stock Exchange's information.
20      without getting into detail, one of the core elements
21  of that is that the defendants' experts do their work at the
22  facility on the computers that are at the facility and that
23  belong to the Stock Exchange.  when they are there, they can do
24  all the things that these defendants want to do.  They can make
25  their own screenshots.  They can make screenshots for an entire
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

44

627dbonc
1   day.  They can deconstruct and delve beneath the screenshots
                          Page 21

627DBONC.txt

2   that we've produced.  They can do -- they can make screenshots
3   40 times longer than the ones we have.  They can attempt to rip
4   down the screenshots.  They can do everything I think that they
5   want to do, but they need to do it on the SIAC or NYSE
6   computers.
7          THE COURT:  Is there then something built into the
8   system so everyone knows the Stock Exchange is not then going
9   to get access to that information if it is on their own
10  computers?
11         MR. BARKOW:  Well, we are walled off, Ms. Goldberg and
12  I are and the agent and I think -- I don't have the agreement
13  in front of me but I think the SEC are walled off from the work
14  product that is done at the facility, and so because of
15  proprietary concerns, the Stock Exchange's counsel has a review
16  mechanism in place to make sure that no proprietary information
17  is taken out, but we're walled off from that.
18         We're even walled off from the identity of the experts
19  who go in and perhaps some other things, as well, and that's
20  why I don't even know who sent in the agreements because I'm
21  walled off from it.  So I want to put that out there.
22         This is a very stringent agreement.  It was drafted by
23  the Stock Exchange and it is extremely important to them, but
24  we think -- I've seen the facility, accompanied by SIAC's
25  security, and it is a private facility.  There are three
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

45

627dbonc
1   computers there, and they will sign up for time.  Their expert
2   will sign up for time.  Lawyers can go with them, and they will
3   be able to do everything they need to do but they will have to
4   do it there.
5          If I can add one other point?  Because of that
6   agreement, one of the factors in the agreement is that the
7   defendants' experts, as well as the defense counsel, have to
8   get security clearance by SIAC to go in and out on their own
9   time.  So they can get IDs.  That is a several-week process and
10  because of the pendency of the dispute over screenshots, the
11  experts will not actually physically be in SIAC doing this work
12  for a few weeks.
13         Once they do that, there are defendants in other cases
14  who are signing up for access to this facility.  I think they
15  are sharing experts, but, again, I don't know because I am
16  walled off so there are not as many experts as there are
17  defendants.  But there is going to be competition for the space
18  and basically hours of the full business day but not
19  necessarily what, you know, the kind of 24-hour approach that
20  they might want to do.
21         We haven't had conversations with these defendants
22  about this in detail because of the pendency of the dispute
23  over what they should have access to.  Now that it's resolved,
24  we will be ready and we would like to go to trial on May 1st.
25         I don't know that they are going to be able to do the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

46

627dbonc
1   things that they want to do by then, but it is our request that
2   we decide that issue now because we basically are already
3   preparing for trial and need to continue to do so now.  But I
4   don't think they are going to get there for a few weeks.
                        Page 22

627DBONC.txt
```
 5          THE COURT:  I think the discussion of the proposed
 6   agreement is premature until the parties talk more about it and
 7   see what can be worked out among them.
 8          I think the request is fair, as I understand it.  The
 9   trial date has been set for May 1.  The Court is ready to try
10   it on May 1, and the government is saying are the defendants
11   serious about May 1.  If so, they will know that.  But if the
12   defendants are not serious about May 1, the government wants to
13   know that as well, and then presumably the parties will see
14   whether the Judge is serious about May 1.
15          Yes, sir.
16          MR. BERKE:  Judge, let me tell you where we are.
17          We are serious about a date May 1 or shortly
18   thereafter.  I say "shortly thereafter."  We have been talking
19   May 1, May 15, possibly even June 1st, your Honor's schedule
20   obviously permitting.  Everyone is anxious to try this case.
21          For us, the issue is we do know about this agreement.
22   I should say that the other defendants that have entered into
23   it have done it not exclusively.  I think they specifically
24   said they'll take it as a first step, although they are
25   reserving all their rights to say it is completely inadequate,
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

47

627dbonc
```
 1   etc.  I don't think any expert has been in yet to look at the
 2   materials.
 3          THE COURT:  Let's start getting it underway.  I think
 4   you all have more knowledge about that than I do, obviously,
 5   because you are talking to your co-defense counsel.  Let's get
 6   those clearances underway as quickly as we can, because I would
 7   like to adhere to that May 1 date.
 8          Go ahead.
 9          MR. BERKE:  Judge, the first of my two-part question:
10   Can we schedule a conference perhaps in three weeks to come
11   back before your Honor?  Obviously, I think we will start
12   talking today about getting our people into SIAC as soon as
13   possible.  I am hopeful it can be much quicker, as a way to
14   expedite this process, and then report back to you where we
15   stand because the delay --
16          THE COURT:  I will do it in ten days.  Why wait three
17   weeks?
18          MR. BERKE:  That is fine, your Honor.  I am saying
19   three weeks because I would like it to be the day after our
20   experts actually see what is being offered at SIAC, and I
21   just -- my hope is that in three weeks, they would be in and
22   actually look at it.  If we can do it within ten days, as
23   quickly as the government believes we may have access to it, we
24   will do it.
25          MR. BARKOW:  Your Honor, the process has been on going
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

48

627dbonc
```
 1   for more than ten days for every other defendant who has been
 2   engaged, and no one has gone there yet.
 3          One of the things that has to happen is the experts
 4   and all the other people who wish to enter need to get
 5   fingerprinted, and those fingerprints need to be sent to a
 6   background check.  They need to make two I think trips to the
 7   facility and one to another one to go through various stages.
```
Page 23

627DBONC.txt

```
 8   And it just -- I know that there is one group of defendants
 9   that started this procedure a few weeks ago and they are not
10   done.  I think they are close to going but nobody has gone --
11             THE COURT:  Let me urge you all --
12             MR. BARKOW:  I just don't think it is going to happen
13   in ten days.
14             THE COURT:  OK.  I want to try this case on May 1.  I
15   want to get it moving.  The defendants have a right to a speedy
16   trial.  You have heard Mr. Berke articulate several times his
17   clients want to go to trial.  Let's let him have his speedy
18   trial rights.  The government has said that it wants to go to
19   trial as well.
20             May 1 it is.
21             Now, we have to work backwards from that.  I urge the
22   parties not to be just paying lip service to wanting to go to
23   trial but to actually act consistent with that articulation.
24   And what that means is pushing against the bureaucracy.  It
25   shouldn't take -- I understand sometimes it just does, but it
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    49
627dbonc
```
 1   shouldn't take a great deal of time to get these clearances.
 2   Somebody can walk the fingerprints through to wherever they
 3   need to go.  Both the government and the defense have enormous
 4   resources here.  Just push through on these procedural hurdles
 5   so we can get those experts in there.
 6             MR. BARKOW:  Your Honor, I just want to be clear, it
 7   is not government bureaucracy.  This is a Stock Exchange SIAC
 8   process that we do not control, and we have been -- and they
 9   are working hard on it.  I don't want to say that they are not.
10   But we have been -- there is a lot of things that they are
11   doing that have nothing to do with this case, and we cannot
12   just cut through the bureaucracy as we can perhaps if it were a
13   government bureaucracy.
14             THE COURT:  I can't do anything except repeat myself.
15   Go to them.  Say, I represent the United States government.
16   See what that does.  Tell them you've got a crazed judge who is
17   going to trial on May 1 and it is very important that this case
18   move forward.  Tell them you don't want to come back in front
19   of that judge again and say I couldn't get the New York Stock
20   Exchange to take fingerprints.  Do what is necessary within the
21   facts.
22             MR. BERKE:  Judge, can I say first, because I want to
23   make sure that I wasn't misunderstood and I didn't misspeak,
24   because I am mindful of the fact that I am also not speaking
25   only on behalf of my client but of the fact that I am speaking
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    50
627dbonc
```
 1   for many other lawyers in the room, sparing your Honor from
 2   hearing everybody speak, and what I was intending to convey is
 3   that people want to go to trial in May.  The question is can
 4   we, given these issues with the data, and because, obviously,
 5   we need to have the data that is underlying much of the
 6   government's proof.
 7             And the question I ask your Honor is really two-fold.
 8   One, would your Honor be able to entertain a request for a
 9   trial date that began on May 15th or June 1st, number one?  And
10   number two, could I have a minute to confer with other counsel
```
                                Page 24

627DBONC.txt
```
11   regarding the discussions we have had today?  I think there has
12   been quite a bit of additional information for us about the
13   trial date issue, because, obviously, I think our one concern
14   is while we want to go to trial, we want to go to trial with
15   the material we need to be prepared to present to your Honor.
16            THE COURT:  I understand that, but what I'm trying to
17   determine is whether the defense is speaking with forked tongue
18   in regard to the trial date, because very often defense
19   attorneys want to go to trial, on the one hand, and on the
20   other hand, that is the last thing they want to do.
21            So if you genuinely want to go to trial on May 1, or
22   May 15, that kind of two-week period I can live with, the
23   parties will work to make sure that happens.  And that's my
24   current intention.  Do I have a window there?  Of course I have
25   a window.
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    51
627dbonc
```
 1            But what I don't want to see happen is, you know, a
 2   month down the line we suddenly find that there are motions
 3   that are going to take months to brief and so the May 1 date is
 4   absolutely impossible.  I think that would be unfair to the
 5   Court and it would be unfair to the government.
 6            If we are working to May 1, or a couple of weeks
 7   either way, that's OK
 8            MR. BERKE:  Your Honor, if I may lay it out?  I assure
 9   you, you will never have to worry about either me or I think
10   anyone else in this case speaking to you with forked tongue
11   about trial date or anything else, and I understand your
12   Honor's concern that we are trying to gain some strategic
13   advantage through that date and I assure you we are not.
14            THE COURT:  No, it is not a question of strategic
15   advantage in so much as let's set a date and let everybody work
16   consistent with that date and get this trial on and have a jury
17   determine the facts.
18            MR. BERKE:  what I think may be useful, your Honor, if
19   I could try your Honor's patience for just a minute or two, is
20   just to lay out:  We've spent many hours as a group discussing
21   these very issues, and I can assure you that when I came and
22   said that we would like to try it whether it is May 15th or
23   June 1st, I meant it, and that was based on these discussions.
24            I think what may be helpful is for us to lay out to
25   you the issues as we've identified them in our own discussions
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    52
627dbonc
```
 1   that relate to that question.
 2            THE COURT:  The trial date is May 1 or May 15.  That's
 3   what we are talking about.
 4            Go ahead.  Talk amongst --
 5            MR. BERKE:  Your Honor, if I may have a minute?
 6            THE COURT:  Talk amongst yourselves.
 7            MR. BARKOW:  Your Honor, if I may --
 8            THE COURT:  I don't think you are a part of that.
 9            MR. BARKOW:  Can I ask you a question?
10            MR. BERKE:  Yes.
11            (Discussion off the record)
12            MR. BERKE:  Judge, thank you for your patience.  We
13   appreciate it.
```
                              Page 25

627DBONC.txt

14    Judge, in addition to the data issue, which I think
15  I've said enough about, Mr. Shapiro outlined sort of the other
16  things that we anticipate, just so your Honor knows what we
17  know. But first --
18    MR. SCHAPIRO: First, we accept May 15th. We are very
19  happy with May 15th.
20    THE COURT: No, no. May 1 or two weeks thereafter.
21  So our window is May 1 to May 15.
22    MR. SCHAPIRO: That is perfect. We are very happy
23  with that, your Honor, and we think we can do that.
24    And just so that there is no confusion, your Honor, we
25  just want to lay out a couple of things that will happen
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

53

627dbonc
1  between now and then. If the Court wants to set a schedule, we
2  can do it now, or otherwise we can raise these as seems
3  appropriate, but I want to flag them to the Court.
4    THE COURT: Go ahead.
5    MR. SCHAPIRO: In between now and trial, among the
6  things that we anticipate happening, we expect to file a motion
7  pertaining to the government's Brady disclosure. We think we
8  can do that quite soon, quite soon. If the Court wants to set
9  a schedule, fine. Otherwise, we will do it as soon as we can
10  and that is coming down the pike.
11    We expect to file our motion to dismiss -- I can't
12  guarantee that we'll do it but we strongly expect that we
13  will -- based on the theory of the case as laid out by the
14  government before Judge Chin yesterday. Because while the
15  Court has ruled that that provides us with enough particularity
16  concerning the conduct that happened, we believe it doesn't
17  actually state a crime.
18    Third, we anticipate that there is a reasonable
19  likelihood, depending on what turns out from the SIAC
20  investigation by our experts, of a Daubert hearing as to the
21  admissibility of the screenshots. That is going to have to
22  happen sometime between now and the trial, but, obviously, that
23  can't happen until after our experts have spent some time at
24  SIAC.
25    We would like to approach the Court about early 3500
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

54

627dbonc
1  material. We are all trying to move forward in a constructive
2  way, be ready for trial between May 1st and two weeks
3  thereafter. We think everyone is advantaged by having 3500
4  material early. And this being a white-collar case, where
5  there is no accusation of violence or threats, we think that
6  one of our countervailing concerns that are outweighed by the
7  advantage we would have to gain or may have by getting piles of
8  transcripts for my imagination is 15, 16, 17 clerks, not to
9  mention all the people who Mr. Barkow has told us he will
10  produce with respect to their 3500 material, not to mention
11  others who testified in depositions. I gather, from what
12  Mr. Barkow said earlier today, that there are a variety of
13  witnesses who testified before the SEC or whose deposition
14  transcripts the government has and he said that it's classic
15  3500 material. So we would like to have that in time to make
16  good use of it.
Page 26

627DBONC.txt

```
17            Then finally 17(c) subpoenas.  It is obviously
18   possible that some of the parties or entities who we subpoena
19   will litigate the subpoenas, and so we want to make sure that
20   time is built in for that.  We obviously didn't want to start
21   subpoenaing until we had your Honor's rulings on discovery,
22   because if Rule 16 covers certain matters, we didn't want to
23   send out Rule 17 subpoenas.  So that is one other issue.
24            Those seem to us to be the main things that will need
25   to be resolved between now and the beginning of our trial on
```
SOUTHERN DISTRICT REPORTERS, P.C.<br>(212) 805-0300

55

627dbonc
```
 1   May 1st or two weeks thereafter.
 2            THE COURT:  Well, it is an awful lot.  When do you
 3   plan to make the motion to dismiss?
 4            MR. SCHAPIRO:  Your Honor, I think we can have that --
 5   we can have our brief and our motion in 21 days from now.
 6            THE COURT:  March 1.
 7            The government, do you have a sense of how long you
 8   will need to respond?
 9            MR. BARKOW:  Your Honor, I guess if they take three
10   weeks to write them, we would like to have three weeks to
11   reply, then.
12            THE COURT:  March 22 for the response.  For reply,
13   March 31.
14            It may be more realistic to make it May 15.  I am just
15   trying to be as realistic as possible because I am not going to
16   be able to dig into it until April if we are talking May 1.
17            Is the government's estimation still approximately
18   three months?
19            MR. BARKOW:  Well, your Honor, I think that was the
20   combination of the government's case and the defense case
21   because our estimate was six to eight weeks.  So for our case.
22            THE COURT:  And I think it is more realistic to make
23   it May 15.  We won't be shooting for May 1 because I am going
24   to need time on that motion to dismiss.
25            If there are going to be Rule 17(c) subpoenas, but you
```
SOUTHERN DISTRICT REPORTERS, P.C.<br>(212) 805-0300

56

627dbonc
```
 1   heard what I said as part of that, obviously get them out as
 2   soon as you feel you can.  Talk to each other about the 3500
 3   material.  I don't think we can do anything on a Daubert
 4   hearing until you get your experts in there and know more about
 5   it.  Make your Brady disclosure motion as soon as you can.
 6            Now, in regard to getting the experts into the SIAC
 7   facility, the government, you said really ten days didn't make
 8   sense, so when do you want to do it for a status report?
 9            MR. BARKOW:  Your Honor, if the defendants are going
10   to submit -- if they are not going to negotiate any terms in
11   the agreement and they are going to start submitting signed
12   agreements tonight to the Stock Exchange, not to us because we
13   don't get them, then I think my impression is that the
14   background check takes -- can I have a moment because there is
15   actually someone here from the Stock Exchange in the back?
16            THE COURT:  Yes, sure.
17            (Pause)
18            MR. BARKOW:  Your Honor, what I propose is that --
19   again, this is premised on the notion that the agreements are
```
Page 27

627DBONC.txt
```
20   sent to the Stock Exchange later today or tomorrow -- that we
21   set a date for two weeks and if it slides a day or so, then we
22   could tell the Court.
23              THE COURT:  Let's do it.
24              MR. BARKOW:  Although, your Honor, I was told that
25   that is the belief of the Stock Exchange as to the fastest they
```
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                                    57

627dbonc
```
1    will be able to process this.
2              THE COURT:  Let's make it February 22.  Let's make it
3    9 a.m.  I have a trial but we will make it 9 a.m.
4              MS. PEERCE:  Your Honor, I think a number of us have
5    school break week that week.  I am just looking at my own
6    calendar.
7              MR. MEISTER:  She is the bravest one of us all.
8              MS. PEERCE:  I am the mother in the room, your Honor.
9              THE COURT:  Well, that better gives the Stock Exchange
10   a little more time.
11             February 27.
12             MS. PEERCE:  Thank you.
13             THE COURT:  So February 27th.  Let's do it at 12:30.
14   I will break the trial just before lunch.  February 27th at
15   12:30 for a status report.
16             Now, I don't know what the trial schedules are on the
17   other cases, government, but perhaps the Stock Exchange can
18   provide access to the experts based on trial dates.  I don't
19   know how the Stock Exchange is going to negotiate it if there
20   are lots of different experts.  Maybe the defense is sharing
21   experts.  But I put that out so that maybe we can get the
22   experts in this case in and then out expeditiously.
23             Since you indicated that somebody is here from the
24   Stock Exchange, you can see that the Court is interested in
25   getting this case on for trial, and I would appreciate anything
```
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                                    58

627dbonc
```
1    the Stock Exchange can do to expedite access to the materials.
2    It obviously should feel comfortable in terms of that its
3    proprietary information is being kept proprietary, but I would
4    appreciate anything to give these experts the amount of time
5    and access to the facilities that they need in order for us to
6    get this case ready for trial.
7              Thank you.
8              Government.
9              MR. BERKE:  Judge, as to the agreement, we will begin
10   speaking to the government immediately, including tomorrow,
11   and, hopefully, either reach agreement hopefully tomorrow or
12   figure out what we don't agree on and can agree on.  And if we
13   reach the unfortunate position that we can't agree, would your
14   Honor be open to us contacting your Honor to appear before you
15   by phone or in person, however you prefer, to work out the
16   issues as quickly as possible?
17             THE COURT:  We won't do it by phone, but we will do it
18   in person.  And to the extent there are computer issues,
19   somebody is going to have to educate me on them.  But, yes, I
20   am here if there is a dispute.  Try not to have a dispute.  If
21   there is one, I will handle it.
22             MR. BERKE:  Thank you, your Honor.
```
                              Page 28

627DBONC.txt
```
23              THE COURT:  OK.
24              MR. BARKOW:  Your Honor, I would ask that the Court
25    exclude time between now and the trial date in the interest of
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                                    59
```
      627dbonc
 1    justice.
 2              THE COURT:  Defense counsel, on the record?
 3              MS. PEERCE:  No objection, your Honor.
 4              MR. RIOPELLE:  No objection, Judge.
 5              MR. BROWN:  No objection, your Honor.
 6              MR. MEISTER:  No objection.
 7              MR. BACH:  No objection.
 8              MR. SCHAPIRO:  No objection.
 9              MR. BERKE:  No objection.
10              THE COURT:  With the motion having been made by the
11    government for an exclusion of time pursuant to the Speedy
12    Trial Act from today until May 15th, the date of trial, having
13    been made and each of the defendants specifically stating they
14    have no objection, I hereby exclude time from today until
15    May 15th pursuant to 18 U.S.C. 3161(h)(8)(A).
16              The purpose of the exclusion is for continuity of
17    counsel as well as for trial preparation.  There are going to
18    be motions, apparently.  During the pendency of those motions,
19    there will be additional automatic exclusions, but this is to
20    each and any exclusion.  I make the finding that the ends of
21    justice outweigh the interests of the public and each of the
22    defendants in a speedy trial, given the significant material
23    that has to be processed and the work involved for counsel on
24    both sides to prepare for trial.
25              All right.  Thank you.  I will see you on the next
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                                    60
```
      627dbonc
 1    date.
 2              ALL COUNSEL:  Thank you, your Honor.
 3              THE CLERK:  All rise.
 4
 5                              -   -   -
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```
                              Page 29

627DBONC.txt
SOUTHERN DISTRICT REPORTERS , P.C.
(2 12) 805-0300