UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────
UNITED STATES OF AMERICA,            )
                                     )
            v.                       )
                                     )
ROBERT COPLAN,                       )
MARTIN NISSENBAUM,                   )
RICHARD SHAPIRO,                     )    (S1) 07 Cr. 453 (SHS)
BRIAN VAUGHN,                        )
DAVID L. SMITH, and                  )
CHARLES BOLTON                       )
                                     )
            Defendants.              )
───────────────────────────────

## REPLY MEMORANDUM OF LAW IN FURTHER
## SUPPORT OF DEFENDANTS' DISCOVERY MOTIONS

 

MORVILLO, ABRAMOWITZ, GRAND,
IASON, ANELLO & BOHRER, P.C.
Attorneys for Richard Shapiro
565 Fifth Avenue
New York, NY 10017
(212) 856-9600

Of Counsel:
John J. Tigue, Jr.
Jeremy H. Temkin
Kristy Watson Milkov
Matthew B. Homberger (pending admission)

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT .................................................................................................................... 1

A. The Government Should be Ordered to Identify Which of the 218 Transactions it Intends to Prove at Trial ................................................................................... 1

    1. The Extent of Discovery Weighs in Favor of a Bill of Particulars .................. 2

    2. The Indictment and the Time Afforded Defendants to Review the Government's Voluminous Discovery are Inadequate Substitutes for the Identification of the Particular Transactions to be Proved at Trial .................. 3

    3. The Government's Attempts at Distinguishing <u>Bin Laden</u>, <u>Nachamie</u> and <u>Savin</u> are Unavailing ...................................................................................... 5

B. The Government Should be Ordered to Identify Co-Conspirators ............................. 8

C. The Government Should be Ordered to File a Bill of Particulars Clarifying the Indictment's References to "Other Things," Other Entities" and Similar Language .10

CONCLUSION ............................................................................................................... 11

## **TABLE OF AUTHORITIES**

United States v. Bin Laden, 92 F. Supp. 2d 225 (S.D.N.Y. 2000) ...................... 2, 5, 6, 8, 9

United States v. Bongiorno, 05-CR-390 (SHS), 2006 WL 1140864
  (S.D.N.Y. May 1, 2006) ........................................................................................... 8

United States v. Chalmers, 410 F. Supp. 2d 278 (S.D.N.Y 2006) ............................... 8, 10

United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988) ................................................. 10

United States v. Ganim, 225 F. Supp. 2d 145 (D. Conn. 2002) ....................................... 10

United States v. Mahaffy, 446 F. Supp. 2d 115 (E.D.N.Y. 2006) ....................................... 8

United States v. Nachamie, 91 F. Supp. 2d 565 (S.D.N.Y. 2000) ...................... 2, 6, 7, 8, 9

United States v. Savin, 00-CR-45 (RWS), 2001 WL 549420
  (S.D.N.Y. Mar. 7, 2001) ................................................................................... 2, 6, 7

United States v. Segal, 02-CR-112, 2004 WL 830428
  (N.D. Ill. April 16, 2004) ......................................................................................... 2

United States v. Viertel, 01-CR-571 (JGK), 2002 WL 1560805
  (S.D.N.Y. July 15, 2002) .......................................................................................... 8

United States v. Washington, 947 F. Supp. 87 (S.D.N.Y. 1996) ...................................... 10

## PRELIMINARY STATEMENT

Defendants Robert Coplan, Martin Nissenbaum, Richard Shapiro, Brian Vaughn and Charles Bolton respectfully submit this reply memorandum in further support of their motion for an order directing the government to provide a bill of particulars.[1]

## ARGUMENT

### A. The Government Should be Ordered to Identify Which of the 218 Transactions it Intends to Prove at Trial

Count One of the Indictment[2] refers to 218 tax shelter transactions entered into by approximately 325 different clients of E&Y. (See Indictment, ¶¶ 21, 27, 35, 54; Tigue Aff., ¶ 6.) In their moving papers, defendants demonstrated that the complexity of this case, in combination with the mountain of discovery the government has provided to date (and to which it is still adding), warranted a bill of particulars identifying which of these transactions the government intends to prove at trial. (Defendants' Disc. Mem. at 5-8.) In opposition, the government argues that the "voluminous discovery" in this case, the length of time afforded the defense to review the discovery, and the length and detail of the Indictment all weigh against ordering these particulars. (Opp. Mem. at 77-79.) The government's arguments ignore the substantial prejudice to defendants in being forced to waste limited time and resources preparing to rebut evidence of complex transactions the government does not intend to present at trial. Thus,

---

[1] The parties separately agreed upon a schedule for the production of the remaining discovery materials sought in defendants' discovery motion; namely, a list of the witnesses the government intends to call at trial; any statements of such witnesses (as defined in 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2); any impeachment material relating to such witnesses; an exhibit list; and notice of evidence the government intends to introduce pursuant to FED. R. EVID. 404(b). See Stipulated Pretrial Scheduling Order entered on June 12, 2008. Additionally, the government has agreed to promptly produce any Brady materials not otherwise covered by the scheduling order.

[2] "Indictment" refers to the Superseding Indictment returned by the grand jury on February 19, 2008, a copy of which is annexed to the Affidavit of John J. Tigue, Jr., sworn to May 5, 2008 (the "Tigue Aff." or the "Tigue Affidavit") as Exhibit A; "Defendants' Disc. Mem." refers to the Memorandum of Law in Support of the Discovery Motions Filed on Behalf of All Defendants; "Shapiro Mov. Mem." refers to the Memorandum of Law in Support of Richard Shapiro's Pre-trial Motions; "Opp. Mem." refers to the Government's Memorandum of Law in Opposition to Defendants' Pretrial Motions; and "Homberger Aff." refers to the Affidavit of Matthew Homberger, Esq., sworn to June 16, 2008.

notwithstanding the government's provision of searchable electronic documents and indices and its specification of "key documents," absent particularization the defense will be obliged to prepare for trial as if all 218 transactions will be presented in detail.

### 1. The Extent of Discovery Weighs in Favor of a Bill of Particulars

In their moving papers, defendants argued that the mass of documents produced by the government necessitates a bill of particulars identifying the transactions that the government intends to present at trial. (Defendants' Disc. Mem. at 5-8 (citing United States v. Bin Laden, 92 F. Supp. 2d 225 (S.D.N.Y. 2000), United States v. Nachamie, 91 F. Supp. 2d 565 (S.D.N.Y. 2000), United States v. Savin, 00-CR-45 (RWS), 2001 WL 549420 (S.D.N.Y. Mar. 7, 2001)).) While the government recognizes that "[t]he ultimate question is whether the indictment and/or other information provided is sufficient 'to permit the Defendants to conduct a meaningfully directed investigation of the relevant facts and circumstances and be prepared to respond to the charges,'" (Opp. Mem. at 76 (quoting Bin Laden, 92 F. Supp. 2d at 235)), the defendants cannot reasonably investigate all 218 transactions, which involve approximately 325 separate investors and the numerous supporting players who participated in the design, sale, implementation and defense of the transactions. Indeed, to do so, defendants must wade through an avalanche of discovery, currently comprising over 15 million pages of electronic discovery and 155 boxes of hard copy documents from at least 20 sources.[3] (Tigue Aff., ¶ 4.)

Contrary to the government's assertion (Opp. Mem. at 77), the fact that the electronic discovery is word searchable does not cure the difficulties faced by defense counsel. A search

---

[3] The government noted in its opposition brief that it had offered to perform targeted searches within certain databases "in an effort to narrow the discovery to those documents potentially relevant to the matters at issue." (Opp. Mem. at 78, n.28.) This is hardly a solution. The issue is confining those searches such that the investigation of the relevant facts and circumstances is meaningful rather than a series of shots in the dark. Moreover, requiring defense counsel to rely on the government to conduct searches to narrow the mass of documents would inappropriately necessitate disclosure of defendants' work product and strategies. See United States v. Segal, 02-CR-112, 2004 WL 830428, at *8 (N.D. Ill. April 16, 2004).

for documents relating to a single transaction (involving two investors), which the defendants believe is referenced in Count Four, returns over six thousand electronic documents, representing approximately 242,502 pages (over 97 boxes of paper), and approximately 150 pages of paper documents. (Homberger Aff., ¶ 2.) To repeat this search (and review the results) for all 218 transactions is simply not possible given the defendants' limited resources.[4]

Moreover, preparation to defend each of the transactions does not end with the search and review of documents produced by the government. With respect to each of the 218 transactions, defendants will need to anticipate the testimony of potential witnesses, including the investor, the salesperson who sold the transaction to the investor, the E&Y contact partner assigned to the investor, the general partners and counterparties involved in executing the transactions, and the attorneys and other professionals who either reviewed the transaction before the investors proceeded or who represented the investor during later proceedings.

In sum, the trial of this case will be far more complicated than the run-of-the-mill fraud case. To prepare to defend each of the 218 transactions referenced in the Indictment requires a substantial allocation of resources, much of which will be wasted if, as defendants suspect, the government only intends to offer detailed evidence regarding a handful of transactions.

### 2. The Indictment and the Time Afforded Defendants to Review the Government's Voluminous Discovery are Inadequate Substitutes for the Identification of the Particular Transactions to be Proved at Trial

The government argues that the length and detail of the Indictment, together with the amount of time the defendants have to review the discovery, ameliorates the absence of identification of the specific transactions to be presented at trial. (Opp. Mem. at 77-79.) This argument disregards the enormous waste of resources associated with preparing to defend 218

---

[4] The defendants recognize that (i) not all transactions will return the same volume of documents, and (ii) there is bound to be some overlap among the documents culled for different transactions. (Homberger Aff., at ¶ 3.)

tax shelter transactions and the effect of the vague language that permeates the Indictment.

As detailed more fully below, numerous paragraphs in the Indictment refer to unnamed co-conspirators.[5] Given the length of the alleged conspiracy and the diffuse activities these co-conspirators are alleged to have engaged in (see Indictment, ¶¶ 13-14), there could be hundreds of unnamed persons and entities. The defendants' ability to perform targeted "word search[es] on the electronic documents" (see Opp. Mem. at 77), is limited because the defendants are unable to search the names of co-conspirators and other entities.[6]

The government's further point that most of the defendants "will have had access to most of the central materials for more than a year and a half" is less compelling when one considers that, as the government admits, discovery has been produced on a rolling basis, remains incomplete even now and totals over 15 million pages. (See Opp. Mem. at 79; Homberger Aff., ¶ 5 & Exhibit A.) Moreover, the government ignores the fact that the "central materials"[7] are dispersed throughout more than 15 million pages of discovery. Simply having "access" to 15 million pages of discovery does not mean that defendants will have an adequate opportunity to review, digest and incorporate those documents into trial preparation so they will be usable once the government identifies which tax shelter transactions it intends to prove at trial.[8] The government's position is essentially that the defendants should consume the next nine months preparing defenses for all 218 transactions, while it prepares to present only a small fraction. The government has not identified any prejudice that it will suffer if it identifies the transactions

---

[5] See, e.g., Indictment, ¶¶ 13-16, 18, 23(c), 23(f), 26, 26(d), 29, 30(e), 31, 33, 53, 59.
[6] Defendant's ability to perform targeted electronic word searches is further compromised by the near-complete absence of metadata in the majority of the electronic data. (See Homberger Aff., ¶ 4.)
[7] It is unclear what constitutes the "central" discovery materials referenced by the government. (See Opp. Mem. at 79.) Documents "material to preparing the defense" may be discovered in any of the document collections, including those that have yet to be produced.
[8] Nor are the "key" documents produced by the government an adequate substitute for the identification of the transactions it intends to prove at trial. While these materials include some transaction-specific documents, they appear to be intended to illustrate how the transactions were designed and executed rather than to identify specific transactions that will be at issue.

it intends to prove at trial; instead, its position appears to be motivated by strategic considerations.[9] Such gamesmanship has no place in a criminal prosecution.[10]

### 3. The Government's Attempts at Distinguishing <u>Bin Laden</u>, <u>Nachamie</u> and <u>Savin</u> are Unavailing

The government also contends that the "[d]efendants' reliance on [<u>United States v. Bin Laden</u>], is misplaced" on grounds that the conspiracies charged in <u>Bin Laden</u> "differ[ed] greatly from the one charged in this Indictment both in their geographical scope and the nature and breadth of the criminal conduct charged." (Opp. Mem. at 79-80.) The government argues that the <u>Bin Laden</u> defendants had sought particularization of broadly-described overt acts, while the "single conspiracy charged in this Indictment ... is narrowly focused on the defendants' efforts to defraud the IRS through a discrete number of clearly specified and extensively described tax shelters." (<u>Id.</u> at 80.)

Regardless of whether the types of *shelters* are "clearly specified" and "extensively described" in the Indictment, the government would have defendants prepare to defend all 218 executions of these shelters. In that sense, <u>Bin Laden</u> is on point. In <u>Bin Laden</u>, the Court ordered particularization of "those [allegations] which are described in general terms that refer to so broad a class of activity that they would require an exceedingly extensive investigation by defense counsel." 92 F. Supp. 2d at 236. Moreover, it did so in a case where the government

---

[9] To be clear, the defendants do *not* seek specification of the *acts* the government intends to prove at trial or evidentiary detail as to how it intends to prove that specific transactions were fraudulent; defendants only seek identification of the specific transactions the government intends to put at issue.

[10] The government protests that it "is not remotely in a position this far in advance of trial to identify precisely which of the '218 transactions' it will seek to offer detailed evidence about at trial." (<u>See</u> Opp. Mem. at 83, n.30.) The government has been conducting an investigation into the Ernst & Young tax strategies since at least 2004. After four years of investigation and almost one year after the original indictment, the government should be in a position to identify which transactions it intends to present at trial. If, however, the government truly cannot identify the transactions it intends to offer at trial at this time, an order directing it to identify them by November 1, 2008 would strike a balance between allowing the government additional time to select transactions while enabling the defendants to focus the last four months of their trial preparation on the transactions that will be the subject of detailed proof.

produced significantly less discovery and despite the government's argument, as here, that it had already provided a detailed indictment and voluminous discovery. Compare id. at 232 with Opp. Mem. at 77. Here, the Indictment's broad reference to 218 individual transactions (see Indictment at ¶¶ 13-14, 21, 27, 35, 54), similarly will "require an exceedingly extensive investigation by defense counsel." Bin Laden, 92 F. Supp. 2d at 236.

The government also disputes the applicability of United States v. Nachamie and United States v. Savin. (Opp. Mem. at 81-83.) According to the government, those courts required identification of particular transactions primarily because "the Government had produced voluminous discovery about a multitude of transactions, but had failed to identify which of the transactions were the basis of the alleged criminal conduct." (Id. at 81.) Here, the government concludes, there is no corresponding "need to identify which of the transactions are part of the fraud (like there was in Nachamie and Savin), because they are all essentially the same and all part of the alleged criminal conduct." (Id. at 83.)

The government's attempt to distinguish Nachamie and Savin misses the point. In both Nachamie and Savin, the court ordered a bill of particulars identifying specific transactions because the magnitude of the discovery, combined with the inadequate disclosures afforded by the indictment and the government's other disclosures, rendered the defendants unable to properly prepare for trial and avoid surprise. See Nachamie, 91 F. Supp. 2d at 571-72 ("[w]hile [disclosures offered by the government] are a good start, they are not specific enough and do not go far enough to 'enabl[e] defendant[s] to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy....'") (quoting United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); Savin, 2001 WL 243533 at *4 ("As in Bortnovsky and Nachamie, [the defendant] is entitled to more information in order for him to prepare for and not be subject to surprise at

6

trial.").

In this case, the discovery is apparently about 100 times that produced in <u>Nachamie</u> and <u>Savin</u>. See <u>Nachamie</u>, 91 F. Supp. 2d at 571 (200,000 pages of discovery); <u>Savin</u>, 2001 WL 243533 at *3 (100,000 pages). Aside from the three transactions specified in Counts Two through Four, the Indictment does not identify which of the 218 transactions will be the subject of proof at trial. The government's response that all of the transactions were unlawful leaves defendants in the position where they must prepare as though all 218 transactions (which are vastly more complicated than those at issue in either <u>Nachamie</u> or <u>Savin</u>) will be the subject of detailed presentation at trial. (<u>See</u> Opp. Mem. at 83, n.30.)

Moreover, the government's distinction of <u>Nachamie</u> fails in another, crucial respect. In <u>Nachamie</u>, Judge Scheindlin did not order the government to merely designate which transactions were fraudulent; rather, Judge Scheindlin required the government to identify the fraudulent transactions it intended to prove at trial. <u>Nachamie</u>, 91 F. Supp. 2d at 576. Like the defendants in <u>Nachamie</u>, the defendants here are unable to predict what portion of the massive volume of discovery is likely to be significant at trial, and are therefore similarly entitled to an identification of those transactions for which the government intends to prove they may be held criminally responsible. <u>See</u> <u>id</u>.[11]

Finally, the government argues that "each of the transactions within a particular category

---

[11] In ruling that the defendants were entitled to learn which transactions were to be proven at trial, Judge Scheindlin relied, in part, on the government's earlier refusal to designate the portions of its discovery that would be offered at trial. <u>Nachamie</u>, 91 F. Supp. 2d at 572. The government does not and could not argue that its provision of certain discovery materials in accordance with the stipulated pretrial scheduling order granted by the Court on June 12, 2008 will sufficiently address the defendants' need for a bill of particulars. This order provides for production of materials only six weeks prior to trial. Even if those materials indicate which transactions will be offered in the government's case-in-chief, six weeks is far too brief a period of time to permit adequate preparation of a defense of those transactions, particularly given the volume of discovery and the complexity of the case. <u>See also</u> <u>Nachamie</u>, 91 F. Supp. 2d at 571-572 (noting that government offers to identify fraudulently billed procedures sixty days before trial and provide a summary chart forty-five days before trial are "a good start" but are "not specific enough" and "do not go far enough to 'enabl[e] defendant[s] to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy'" (citations omitted)).

7

of tax shelter is the same in all material respects as the others in that category," and thus that defendants' "preparation [of a defense for all 218 transactions] will not be burdensome." See Opp. Mem. at 83, n.30, see also id. at 82 (describing transactions as "cookie cutter"). This ignores the reality of trial preparation. The government apparently intends to present specific evidence regarding a subset of the 218 transactions, assumedly seeing some evidentiary value in doing so. The preparation of defenses for 218 individual transactions requires consideration of the unique participants and details of each transaction, and will not be a simple matter of defending the four categories of tax strategies.

### B. The Government Should be Ordered to Identify Co-Conspirators

In their moving papers, see Defendants' Disc. Mem. at 11-13, defendants argued that a bill of particulars identifying unnamed co-conspirators was warranted under the six-factor test articulated by Judge Scheindlin in Nachamie. See Nachamie, 91 F. Supp. 2d at 572-73; see also Bin Laden, 92 F. Supp. 2d at 241. In opposition, the government offers lengthy boilerplate listing cases denying similar requests (Opp. Mem. at 87-89),[12] and disputes the presence or applicability of certain of the Nachamie factors (id. at 89-91).[13]

---

[12] The government, of course, ignores those cases in which courts have ordered particularization of co-conspirators. (See Defendants' Disc. Mem. at 11 (citing cases).) None of the cases the government cites in its boilerplate appear to be wholly on point. For one, it is not apparent that the defendants in those cases confronted discovery amounting to anything approximating 15 million pages. See e.g., United States v. Viertel, 01-CR-571 (JGK), 2002 WL 1560805, at *12 (S.D.N.Y. July 15, 2002) (describing discovery as certain invoices and "several thousand pages of bank records"). Where the cases did make reference to a large volume of discovery, the courts apparently rested their denials of particulars on grounds not applicable here. See United States v. Chalmers, 410 F. Supp. 2d 278, 286 (S.D.N.Y 2006) (denying specification of co-conspirators in part because it could cause "significant" harm to the government's ongoing investigation); United States v. Mahaffy, 446 F. Supp. 2d 115, 120 (E.D.N.Y 2006) (denying a bill of particulars in part on the "specificity of the allegations in the Indictment," which included "the date, volume, price, and source of the allegedly unlawful transactions at issue"). The government's reference to this Court's denial of a bill of particulars request in United States v. Bongiorno, 05-CR-390 (SHS), 2006 WL 1140864 (S.D.N.Y. May 1, 2006), (see Opp. Mem. at 87-88), is similarly inapt. Apparently, this Court largely rested its denial on the fact that defendants were in close contact with their co-conspirators. See United States v. Bongiorno, 05-CR-390 (SHS), Tr. 37-38, February 7, 2006 (attached as Exhibit D to Opp. Mem.). Here, co-conspirators could easily include persons and entities of which defendants did not "have intimate knowledge," including, especially, employees of the numerous outside entities involved in the transactions. See id. at 38.

[13] The government concludes its argument by arguing that "at most, the Court should direct the Government to identify, at an appropriate time much closer to trial, those known co-conspirators the Government intends to call as

However, each of the factors supporting identification of the unnamed co-conspirators in Nachamie and Bin Laden are present in this case. As the government essentially concedes, a large number of alleged co-conspirators are involved in this case, and the Indictment charges a lengthy conspiracy. (See id. at 89.) The government attempts to minimize these factors by arguing that the defendants should nevertheless be able to guess the identities of the unnamed co-conspirators because the "extensive discovery materials clearly reveal who played what role, and who communicated with whom on what subject." (See id. at 89-90.) This broad assertion ignores Nachamie and Bin Laden, both of which found that "extensive discovery" militates in favor of identifying unnamed co-conspirators, which "help[s] a defendant focus his investigation and prepare for trial." Bin Laden, 92 F. Supp. 2d at 241; Nachamie, 91 F. Supp. 2d at 573.

Moreover, contrary to the government's claim that the charged conspiracy "involved, in large part, the defendants' co-workers," see Opp. Mem. at 91, the Indictment suggests that many of the co-conspirators were employed by law firms, investment companies, banks and the like. (See Indictment, ¶13 (alleging that the conspiracy to defraud the IRS involved all of the following activities: "designing, marketing, implementing, and defending tax shelters").) It is likely that defendants did not directly interact with some of these people.[14] Moreover, the volume of the discovery, which is largely unaccompanied by useful metadata, see supra note 6, belies the government's claim that the "extensive discovery materials clearly reveal" the unnamed co-conspirators. In short, the massive volume of discovery materials, which dwarfs the volume of discovery confronted by the defense in Nachamie and Bin Laden, is a compelling

---

witnesses in its case-in-chief at trial, or whose statements the Government intends to offer into evidence under Fed. R. Evid. 801(d)(2)(E)." (Opp. Mem. at 91.) If the Court agrees with the government's proposition, the names and statements of these co-conspirators should be provided no later than three months before trial in order to permit the defendants sufficient time to investigate their roles in the case.

[14] Even if the conspiracy largely involved only defendants' co-workers, Ernst & Young is one of the world's largest accounting firms (employing approximately 130,000 people worldwide) and the indices provided by the government suggest that Ernst & Young obtained and produced documents relevant to one or more of the transactions from approximately 150 individuals.

factor that supports identification of the unnamed co-conspirators in this case.[15]

### C. The Government Should be Ordered to File a Bill of Particulars Clarifying the Indictment's References to "Other Things," Other Entities" and Similar Language

Finally, the government opposes defendants' request for detail regarding the numerous occurrences of such expressions as "other things," "other entities" and "other steps,"[16] in cursory fashion. In essence, the government claims that such specificity represents an attempt to obtain evidentiary detail, that the detail contained in the Indictment affords the defendants sufficient notice, and that particularization would unduly limit the government's ability to present additional acts at trial. (See Opp. Mem. at 83-84.)[17] In fact, the vague language throughout the Indictment will compromise defendants' ability to prepare for and defend against the government's charges, both known and unknown. See United States v. Davidoff, 845 F.2d 1151, 1154-55 (2d Cir. 1988); see also United States v. Ganim, 225 F. Supp. 2d 145, 155 (D. Conn. 2002). For example, a number of the paragraphs are so open-ended as to permit the government to prove false statements beyond those specified in the Indictment. (See, e.g., Indictment, ¶¶ 62(a)-62(d), 66, 67, 78, and 89.)

---

[15] The government apparently does not contest the defendants' assertion that the identification of co-conspirators will not result in potential danger to the co-conspirators (see Defendants' Disc. Mem. at 12), another factor weighing favor of particularization. The government does argue that its investigation is ongoing, and asserts, in conclusory fashion, that the "disclosure of the identity of uncharged co-conspirators could endanger that ongoing investigation." (Opp. Mem. at 90.) While defendants doubt that the government's investigation will be compromised, even if the government had demonstrated some prejudice, which it did not, the appropriate remedy would be to file the list of co-conspirators under seal, not to deprive the defendants of information necessary to prepare their defense.

[16] See Indictment, ¶¶ 8, 31, 32, 33(a), 33(b), 33(c), 34, 51, 58, 62(a), 62(b), 62(c), 62(d), 65, 66, 67, 78, 79, 86, 87, 89, 96, 96(g), 97, 103, 105, 110, 113, 122, 124, 125, 127, 140, and 141.

[17] The government relies on United States v. Chalmers, and United States v. Washington, 947 F. Supp. 87 (S.D.N.Y. 1996), for these propositions. In Chalmers, however, the defendant objected to the purported lack of specificity of the transactions at issue and the Court held that additional particulars were not warranted given that the indictment already identified some of the relevant transactions by date and time. 410 F. Supp. 2d at 284. Moreover, in Chalmers, the Court ordered the government to specify additional transactions thirty days prior to trial and indicated that it would be "sensitive to the reasonableness of the number of additional transactions alleged by the government." Id. at 286. In Washington, the defendant sought particularization of the means portion of the indictment in an attempt to compel the government to set out the evidentiary basis for the alleged crime. 947 F. Supp. at 90. Here, the vast majority of the instances of challenged language lie within charging paragraphs; their particularization simply provides adequate notice of the government's charges.

## **CONCLUSION**

For the reasons stated above, Defendants respectfully request that the Court grant their motion requiring the government to provide a bill of particulars (a) specifying which of the 218 transactions it intends to prove at trial; (b) naming the unidentified co-conspirators described within the Indictment; and (c) identifying the "other things," "other steps," "other ways" and "other entities" referenced within the Indictment.

Dated: June 16, 2008
      New York, New York

                              MORVILLO, ABRAMOWITZ, GRAND,
                              IASON, ANELLO & BOHRER, P.C.

                    By:    s/John J. Tigue, Jr.
                           John J. Tigue, Jr.
                           565 Fifth Avenue
                           New York, NY 10017
                           (212) 856-9600