IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:07-cr-00453-SHS |
| v. | ) | |
| ROBERT B. COPLAN, et al | ) | Hon. Sidney Stein |

**DEFENDANT ROBERT B. COPLAN'S MOTION
FOR MODIFICATION OF CONDITIONS OF SUPERVISED RELEASE**

Defendant, Robert B. Coplan, by his undersigned counsel, hereby requests, pursuant to 18 U.S.C. §3582(e)(2), that the Court modify the conditions of his supervised release.  The grounds for the motion are as follows:

1.On January 28, 2010, this Court entered judgment (Dkt 274) ('the judgment") in the above-captioned matter, sentencing Mr. Coplan to 36 months of incarceration, to be followed by three years of supervised release upon his release.  The judgment included a special condition of supervised release that provided:

> Defendant shall perform 120 hours of community service for each year on supervised release.  A minimum of 60 hours shall be spent speaking to professional groups such as the tax section of the American Bar Association, the American Institute of Certified Public Accountants, accounting firms, and other bar associations, concerning his history and how other professionals can avoid crossing over into illegal activities. The balance of community service shall be spent assisting low income people with preparing and filing their tax returns.  Defendant shall devise a plan of community service with his probation officer.  The probation officer shall send a copy of the proposed program each year to the Court.

2.Mr. Coplan appealed his conviction.  On November 29, 2012, the United States Court of Appeals for the Second Circuit affirmed Mr. Coplan's conviction (although it vacated the convictions of co-defendants Shapiro and Nissenbaum).  Mr. Coplan was designated by the Bureau of Prisons to its facility at Martinsburg, West Virginia, and self-surrendered there on April 12, 2013.  Mr. Coplan was released from Martinsburg on November 20, 2015.

3. Immediately following his release from incarceration, Mr. Coplan initiated efforts to comply with the special conditions of supervised release, including:

    a. At Mr. Coplan's request and on his behalf, undersigned counsel inquired of representatives of the relevant committees within the ABA Tax Section about the possibililty of Mr. Coplan speaking at one of the organization's meetings. There was little interest in that forum, perhaps because the events at issue occurred over 15 years ago, there have been no repeated instances of these types of shelters since the IRS strengthened its disclosure and tax shelter registration requirements in 2002, and the tax world has "moved on" to other issues.

    b. Four days after Mr. Coplan's release, counsel also communicated with attorneys known to her in Texas, where Mr. Coplan resides, who are either connected to law schools or to organizing tax conferences, explaining Mr. Coplan's community service requirement and asking them to consider whether they would use Mr. Coplan in one of their courses or programs. Although there was some initial interest, when Mr. Coplan tried to follow up, phone calls were not returned, and interest seemed to dissipate quickly when Mr. Coplan tried to pin down specifics.

4. As the Court will appreciate, Mr. Coplan cannot speak to a group or organization that is not interested in including him in its program. It has become abundantly clear that even if Mr. Coplan were able to successfully line up a speaking engagement or two, it is not feasible for him to satisfy a requirement of 60 hours per year of this type of community service.

5.     Immediately after his November 20, 2015 release from Morgantown, Mr. Coplan also tried to do what was necessary to meet the second prong of the Court's community service order.  In late November, Mr. Coplan registered on the IRS' VITA website as an interested volunteer.  Since there was no number to call and no other means provided to contact anyone with the VITA program, Mr. Coplan waited to be contacted.  After a few weeks of hearing nothing, he worried that filing season would be starting soon, and in December tried calling the IRS for more information.  There was no one at the IRS who knew anything about the program, because, as it turns out, the volunteer program does not really gear up until January.  Mr. Coplan followed up by email, eventually receiving a response that directed him to the online IRS VITA training materials and certification to be a VITA volunteer.  Mr. Coplan completed his certification on February 4, 2016, and sent another email asking what would happen next.  (The person responding to Mr. Coplan by email never provided a name or phone number.)  Mr. Coplan was told he would hear from his local site coordinator within 10 business days.  That never happened, so Mr. Coplan went to the local public library on the day when the volunteers were preparing returns, and learned that there had been problems with the new online portal for VITA in 2015, and people slipped through the cracks.  In mid-February, Mr. Coplan sent an email with a full explanation of his interest in volunteering to the person he was told was the area VITA site coordinator.  He never received a reply to his email.

6.      It is possible that Mr. Coplan never heard anything because he is not considered to be a viable VITA volunteer, due to his criminal background. IRS Publication 4961 concerns the VITA program,[1] and provides:

> Do not engage in criminal, infamous, dishonest, notoriously disgraceful conduct, or any other conduct deemed to have a negative effect on the VITA/TCE programs. Volunteers may be prohibited from participating in VITA/TCE programs if they engage (past and future) in criminal, infamous, dishonest, or notoriously disgraceful conduct, or any other conduct prejudicial to the government. Take care to avoid interactions that discredit the program ... Volunteers performing egregious activities are barred from volunteering for VITA/TCE programs, and may be added to a registry of barred volunteers.

7.      Thus, as a practical matter, Mr. Coplan has, through no fault of his own, found himself unable to comply with either prong of the Court's Order. He has kept his probation officer informed about the difficulties he is experiencing in satisfying the Court's specific instructions regarding his community service. The probation officer encouraged Mr. Coplan to petition the Court to revise the community service directive in order to permit him to perform "ordinary" types of community service.

8.      During the period since his release, Mr. Coplan has also been attempting to secure employment. Despite relentless efforts, he has to date been unable to secure any kind of employment. His financial condition is such that, even if he were successful in identifying an occasional speaking opportunity, he does not have the resources to travel around the United States to the locations where the conferences of the ABA[2] or the AICPA are held.

---

[1] At sentencing, the Court inquired whether Mr. Coplan would be permitted to volunteer as a tax preparer. Counsel opined that she thought the answer would yes. In the intervening seven years, however, the IRS has adopted a different view. While there is no legal restriction on Mr. Coplan – or anyone else – preparing tax returns for compensation, *Loving v. IRS,* 742 F. 3d 1013 (D.C.Cir. 2014), in order to participate within a program sponsored by the IRS, Mr. Coplan must meet that program's requirements. All of the low income tax preparation projects in Texas provide volunteers in coordination with the IRS VITA program.

[2] In 2016, the ABA Tax Section met in January in Los Angeles. Through the end of 2017, it will meet twice in Washington DC, and once each in Boston, Massachusetts, Orlando Florida, and Austin, Texas. (See Exhibit A) The

9. Section 3583(d)(1) provides that at sentencing court may include any condition of supervised release that "is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)." Those factors are "the nature and circumstances of the offense and the history and characteristics of the defendant," "afford[ing] adequate deterrence to criminal conduct," "protect[ing] the public from further crimes of the defendant," and "provid[ing] the defendant with needed educational or vocational training, medical care, or other correctional treatment…", respectively. The Court explained at sentencing that it was directing Mr. Coplan to speak to tax professionals so that other professionals could avoid making the same mistakes Mr. Coplan had made – a reasonable choice in effecting the deterrence called for under §3553(a)(2)(B), if the condition could be implemented. It is less clear that the Court's direction that Mr. Coplan engage in tax preparation services for low-income persons effects any deterrence, since Mr. Coplan's history would not be known to those taxpayers or to the other tax preparers with whom he might interact. Nor does that condition appear to achieve any of the other purposes of supervised release. In any event, while Mr. Coplan is prepared to fulfill either or both of the conditions, the circumstances as explained above make it highly unlikely that he will be able to do so.

10. Mr. Coplan submits that in light of: 1) the many years that have passed since the events at issue in his trial, 2) his completion of his period of incarceration as a model inmate, and 3) the continuing frustration he is experiencing in securing employment, the Court should find it acceptable to eliminate the community service requirement entirely so that Mr. Coplan can focus on attempting to obtain employment and rebuilding his life. At a minimum, Mr. Coplan requests

---

Section also co-sponsors with the ABA Criminal Justice Section a Criminal Tax Fraud and Tax Controversy conference usually held in December in Las Vegas. The AICPA sponsors various conferences held around the country, most of which are devoted to narrow technical issues not suited to the kind of presentation the court envisioned. (See Exhibit B).

that the Court remove the restrictions on the manner in which the community service requirement may be satisfied.

                              Respectfully submitted,

                              /s/ Paula M. Junghans
                              PAULA M. JUNGHANS
                              Zuckerman Spaeder LLP
                              1800 M Street NW
                              Washington DC  20036
                              Tel:  202-778-1850
                              Fax:  202-822-8106
                              E-mail:  pjunghans@zuckerman.com

5252504.1

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 29, 2016, a copy of the above document was electronically filed with the Clerk of the Court using the CM/ECF system which sent electronic notification of such filing to all those individuals currently electronically registered with the Court.

/s/ Paula M. Junghans

5252504.1